## SOPER *v.* LAWRENCE BROTHERS COMPANY.

ERROR TO THE SUPREME JUDICIAL COURT OF THE STATE OF MAINE.

No. 206.    Argued March 9, 12, 13, 1906.—Decided April 2, 1906.

The distinction between trespass and disseisin may be modified by statute as properly as it may be established by common law.   Nothing in the Fourteenth Amendment hinders a State from enacting that in future the doing of such overt acts of ownership as are possible on wild lands, under a recorded deed showing that the actor claims title coupled with the payment of taxes, the owner not paying any meanwhile or doing any act indicative of ownership, shall constitute a disseisin which if continued long enough shall bar an action for the land; nor is such an act unconstitutional because it fixes the period at twenty years and allows it to become operative as to suits commenced five years after its enactment as it would be within the power of the legislature to fix the entire period of limitation at five years, and the owner would have an opportunity to defeat the disseisin by asserting ownership within that time; such a statute would not be construed as permitting suit to be barred by a period of twenty years' inactivity prior to the enactment of the statute, if acts of ownership were exercised thereafter.

If a state statute, as construed by the state court, is constitutional, this court follows that construction.

THE facts are stated in the opinion.

*Mr. William Frye White,* with whom *Mr. Taber D. Bailey* and *Mr. John B. Cotton* were on the brief, for plaintiff in error:

Chapter 162 of the Public Laws of Maine, 1895, was a limitation law and the state court in its construction of it deprived petitioner of property without due process of law.

The title of this act is "An act to make state tax sales more effectual," yet it is brought into this case, as a perfect defense, where state tax sales are not mentioned or referred to. There can be no constitutional objection to a limitation law, pure and simple, because it affects the remedy. When remedies are tampered with to the detriment of existing substantial rights, the remedial character of such statutes alone would not suffice to render them unobnoxious to the objection successfully urged against other retroactive laws. Wade on Retroactive Laws, § 224.

Calling a statute a limitation law does not make it so unless that is its effect. A court can construe a statute most obnoxious to constitutional guaranties as a limitation law, but if its effect is to impair and destroy vested rights, such construction should not stand.

A state statute which obliges a person in the constructive possession of land, which from its nature and character is capable of no other possession, to bring suit to recover the land, therefore compelling a resort to legal proceedings by one who is in the complete enjoyment of all he claims deprives him of property without due process of law.

The word "wild" used in the statute precludes the idea of any actual occupation. There is no actual possession because as soon as a settler or inhabitant has reduced it to possession, it ceases to be wild, and this statute does not apply. The court below found that this statute did apply and therefore settled the fact that this was wild land.

Where there is no actual possession, constructive possession follows the legal title. Where one has the legal estate in fee of lands, he has the constructive possession unless there is an

actual possession in someone else. 28 Am. & Eng. Ency. of Law, 239.

The plaintiff had the legal title on the date of the enactment of this act, and it being wild land there could be no adverse possession sufficient to divest him of his title.

Cuttings and partial clearings under claim of ownership during twenty or more years, incident to casual lumber operations, are ineffectual to establish any title by disseizin of the true owner; especially when such owners stood in the relation of cotenants with the persons in possession. *Fleming* v. *Paper Co.*, 93 Maine, 110; *Millet* v. *Mullen*, 95 Maine, 421; *Slater* v. *Jephson*, 6 Cush. 129; *Cook* v. *Babcock*, 11 Cush. 129. The payment of taxes on land is not an act of possession, especially of wild land, *Hudson* v. *Coe*, 79 Maine, 83.

The payment of taxes by the actual occupant of land is evidence of the adverse character of the occupancy, but is not evidence that the taxpayer is in fact occupying the land. *Millet* v. *Mullen*, 95 Maine, 401; *Little* v. *Megquier*, 2 Maine, 176.

The registry of a deed of land executed and acknowledged by a grantor who had no right to the granted premises is not constructive notice to the true owner that such conveyance had been made. The registry of a deed is constructive notice only to future purchasers under the same grantors. *Bates* v. *Norcross*, 14 Pick. 224. The mere entry by the grantee under a recorded deed without an open, exclusive occupation manifested by fencing or otherwise, does not amount to a disseizin against the will of the true owner. *Bates* v. *Norcross, supra.*

This statute seeks first to make acts of trespass acts of disseizin, and then it seeks to compel the owner of the land because he has suffered these trespasses to be committed, which could not under the then existing laws affect the title to his land, bring suit to recover his land. In express terms it cuts off the owner of wild lands from the use and enjoyment of his property and only leaves him a right to bring suit to recover what he already owns. Where before he was seized

of his land and had a right of entry in it, by a mere act of the legislature he is disseized for he must become disseized to bring a real action to recover his land. Stearns on Real Actions, 215, 216.

All the incidents and rights of the ownership of wild lands are transferred by legislative authority alone, from one private person to another, and that without compensation, and the owner is forced out of the constructive possession and enjoyment of his property, and made to enter upon expensive litigation to regain it. No acts of ownership however strong during the. five years of grace will save him, but he must bring suit or lose his land.

One who is himself in the legal enjoyment of his property cannot have his rights therein forfeited to another, for failure to bring suit against that other within a time specified, to test the validity of a claim which the .latter asserts, but takes no steps to legally enforce. *Grossbeck* v. *Seeley*, 13 Michigan, 329; Cooley, Const. Lim., 6th ed., 449; *Baker* v. *Kelley*, 11 Minnesota, 358; *Elbridge* v. *Kuehl*, 27 Iowa, 160, 173; *Monk* v. *Carbin*, 58 Iowa, 503; *Wahn* v. *Shearman*, 8 Serg. & R. 357; *Farrar* v. *Clark*, 85 Indiana, 449.

*Hill* v. *Kricke*, 11 Wisconsin, 442; *Leffingwell* v. *Warren*, 2 Black, 599, distinguished as relating to a wholly prospective statute, while under this statute the owner in constructive possession is compelled to bring suit to retain his land, and also prior to the Fourteenth Amendment the court followed the Wisconsin rule.

A state statute which changes the law of disseizin in respect to titles existing when it was passed and on account of such retroactive legislation, creates new obligations and imposes new duties, by converting an estate in possession into a mere right of action and deprives the owner of property without due process of law.

Every statute which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability in respect to

transactions or considerations already past must be deemed retrospective. *Society &c.* v. *Wheeler,* 2 Gall. 105; *Proprietors &c.* v. *Laboree,* 2 Greenl. 286; *Coffin* v. *Rich,* 45 Maine, 515; *Sturges* v. *Carter,* 114 U. S. 512.

In the earlier cases where such retroactive laws were attacked for their supposed conflict with the National Constitution, the Supreme Court of the United States refused to pass adversely to the validity of such as had been sustained by the courts of last resort in the States where they were enacted. This was before the passage of the Fourteenth Amendment. *Satterlee* v. *Mathewson,* 2 Pet. 380, 413; *Watson* v. *Mercer,* 8 Pet. 88. Since the passage of that Amendment, the taking of property from one by means of a statute retroacting upon rights previously acquired is not by due process of law, or the law of the land. *Missouri Pacific R. Co.* v. *Nebraska,* 164 U. S. 404; *Davidson* v. *New Orleans,* 96 U. S. 97.

The constitution of the State has secured to every citizen the right of "acquiring, possessing and enjoying property," and property cannot by a mere act of the legislature be taken from one man and vested in another directly, nor can it by the retrospective operation of law, be indirectly transferred from one to another, or be subjected to the government of principles in a court of justice, which must necessarily produce that effect. *Webster* v. *Cooper,* 14 How. 488, commenting on the *Laboree* case, *supra.* See also *Lewis et al.* v. *Webb,* 3 Greenl. 335; *Given* v. *Marr,* 27 Maine, 220; *Austin* v. *Stevens,* 24 Maine, 520; *Coffin* v. *Rich,* 45 Maine, 515; *Atkinson* v. *Dunlap,* 50 Maine, 117; *Adams* v. *Palmer,* 51 Maine, 493. And see *Thistle* v. *Frostburg Coal Co.,* 10 Maryland, 147.

Where, before the true owner was obliged to incur no expense to retain his property, this statute creates a personal liability to put out money which he may never recover back, and compels him to run the risk of losing his land by a lawsuit. There has been a confiscation of that money required to be paid out, which he does not recover back, without any

hearing whatever. *Dunn.* v. *Snell,* 74 Maine, 27; *Bennett* v. *Davis,* 90 Maine, 102.

*Mr. Orville Dewey Baker,* with whom *Mr. Amos K. Butler* was on the brief, for defendant in error:

The statute of 1895 has received a judicial construction from the court of last resort in Maine. As construed it is not in conflict with the due process clause of the Fourteenth Amendment.

A construction so given to a statute. by the highest court of a State must be accepted by this court in judging whether the statute conforms to the Constitution of the United States. *Railway Co.* v. *Nebraska,* 164 U. S. 414; *Railway* v. *Minnesota,* 134 U. S. 418, 456; *Railway* v. *Illinois,* 163 U. S. 142, 152; *Tullis* v. *Railway,* 175 U. S. 353.

The Supreme Court of Maine having construed the statute as one of limitations and as having only a prospective operation, it is not repugnant to the due process clause of the Fourteenth Amendment. A statute will not be held invalid on the objection of a party whose interests are not affected by it in the manner which the Constitution forbids. Cooley, Const. Lim., 180, 181.

But plaintiff is still further limited. He must show that there was manifest error in the state court in some one of the very respects specially set up by him in the specifications of error. The plaintiff must also show that the errors relied on appear in the record of the state court, and not merely and solely in the final opinion of that court.

The errors assigned do not appear "in the record" of the state court and the constitutionality of the state law was not properly raised or pleaded, or in any way drawn in question by the plaintiff in the state court. *Murdock* v. *Memphis,* 20 Wall. 634; *Moore* v. *Mississippi,* 21 Wall. 639; *Railroad* v. *Hewes,* 183 U. S. 68; *Powell* v. *Brunswick Co.,* 150 U. S. 439; *Railroad* v. *Louisville,* 166 U. S. 715.

The plaintiff asks this court to reverse the construction put

upon a Maine statute by the Maine court and reopen and reverse what is *res adjudicata.* This the court will not do. *Railway* v. *Minnesota,* 134 U. S. 418, 456; *Railway* v. *Illinois,* 163 U. S. 142, 152; *Railway* v. *McCann,* 174 U. S. 580, 586.

The statute of 1821 under review in the *Laboree* case was by its express terms retroactive and was held invalid on that ground.

The principle upon which the act of 1895 is based is not novel. It has been repeatedly passed upon in other States under similar statutes. See *Newland* v. *Marsh,* 19 Illinois, 376, 380; *Stearns* v. *Gittings,* 23 Illinois, 387; *Lawrence* v. *Kenney,* 32 Wisconsin, 293; *Knox* v. *Cleveland,* 13 Wisconsin, 274; *Hill* v. *Kricke,* 11 Wisconsin, 442, approved in *Leffingwell* v. *Warren,* 2 Black, 599; *Waler* v. *Sherman,* 8 S. & R. 357; *Eldridge* v. *Kenkl,* 27 Iowa, 175; *Farrah* v. *Clark,* 85 Indiana, 453.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is an action of trover for logs, brought by the plaintiff in error in the Supreme Judicial Court of Maine. The defendant admitted carrying off the logs, but set up title to the land on which they were cut, one-half in itself and one-half in its licensors. At the trial the plaintiff proved a *prima facie* title to an undivided interest in the land. The defendant relied upon the Maine Public Laws of. 1895, c. 162, § 1. With regard to that, the Chief Justice, presiding, instructed the jury that if the defendant and its licensors, respectively, had satisfied the conditions of § 1, it was entitled to a verdict. A verdict was found for the defendant on that ground. The ruling was taken to the full court on exceptions and a motion for a new trial. At the argument there it was urged that the statute, if applicable to the plaintiff, was contrary to the Fourteenth Amendment and void. But the court, adverting to the question, decided the contrary, and the defendant had

judgment. 98 Maine, 268. The case then was brought to this court.

The material sections of the act of 1895 are as follows:

"SEC. 1. When the State has taxed wild land, and the state treasurer has deeded it, or part of it, for non-payment of tax, by deed purporting to convey the interest of the State by forfeiture for such non-payment and his records show that the grantee, his heirs or assigns, has paid the State and county taxes thereon, or on his acres or interest therein as stated in the deed, continuously for the twenty years subsequent to such deed; and when a person claims under a recorded deed describing wild lands taxed by the State, and the state treasurer's record shows that he has, by himself or by his predecessors under such deed, paid the state and county taxes thereon, or on his acres or interest therein as stated in the deed, continuously for twenty years subsequent to recording such deed; and whenever, in either case, it appears that the person claiming under such a deed, and those under whom he claims, have, during such period, held such exclusive, peaceable, continuous and adverse possession thereof as comports with the ordinary management of wild lands in Maine, and it further appears that during such period, no former owner, or person claiming under him, has paid any such tax, or any assessment by the county commissioners, or done any other act indicative of ownership, no action shall be maintained by a former owner, or those claiming under him, to recover such land, or to avoid such deed, unless commenced within said twenty years, or before January one, nineteen hundred. Such payment shall give such grantee or person claiming as aforesaid, his heirs or assigns, a right of entry and seizin in the whole, or such part, in common and undivided, of the whole tract as the deed states, or as the number of acres in the deed is to the number of acres assessed.

"SEC. 4. This act shall not apply to actions between cotenants, nor to actions now pending in court, nor to those commenced before January one, nineteen hundred."

The defendant and its licensors claimed under the second branch of the statute. They held under recorded warranty deeds describing wild lands taxed by the State, running back for more than twenty years, and, although it must be taken that the first deed of the series was executed by owners of a part interest only, that deed naturally was held by the state courts to be a repudiation of the tenancy in common and to lay a foundation for the working of the act. With that question we have nothing to do. The state treasurer's record showed that the defendant, its licensors and those under whom they claim, had paid the taxes thereon continuously down to the bringing of this suit. The same persons had held such exclusive, peaceable, continuous and adverse possession of the land as comports with the ordinary management of wild lands in Maine, and during the same period no former owner had paid any tax or done any other act indicative of ownership. These facts are admitted or must be assumed to be established by the verdict. This action was brought in 1902 for acts done from 1900 to 1902, after the time allowed by § 4 had run. The question is whether the statute is constitutional as applied to such a case.

Before considering the construction of the statute we will deal with an objection which seems to be made to it, even if solely prospective as we subsequently shall explain. Suppose that the law gives no effect whatever to acts done before its passage, still it is suggested that when it went into operation the plaintiff but for its provision would have been in constructive possession, and the statute purported at once to disseize him and to put him to an action to recover the land. But so far as the statute is prospective it merely enacts, subject to the qualification in § 4, of which we shall speak in a moment, that certain acts, if done in the future, shall constitute a disseizin, and that the disseizin if continued for the due time shall ripen into title. The distinction between trespass and disseizin may be modified by statute as properly as it may be established by common law. Also statutes of limitation

may be passed where formerly there were none. So far as
the Fourteenth Amendment is concerned there is nothing to
hinder a State from enacting that in future the doing of such
overt acts of ownership as are possible on wild land, under a
recorded deed which shows that the actor claims title, coupled
with payment of the taxes, the owner meantime not paying
them, and doing no act indicative of ownership, shall consti-
tute a disseizin, or that such disseizin if continued long enough
shall bar an action for the land. We think it unnecessary to
cite the state decisions on similar statutes or to argue that
proposition at greater length. See *Leffingwell* v. *Warren*, 2
Black, 599.

The main argument for the plaintiff is that if, as was the
fact, the defendant had maintained the statutory occupation
for the twenty years before the passage of the act, the statute
purported retrospectively to give it the title, or, if the statute
did not go to that length, that at least it counted the fifteen
years preceding the enactment with the five following it to
January 1, 1900, in order to make up the twenty years required
by § 1, in any suit brought after that date. The former, more
extreme suggestion, is answered by § 4. By the words of that
section the statute did not apply to actions brought before
January 1, 1900. Therefore, if but for the statute, the plain-
tiff would have had a constructive seizin and might have
declared in trespass, he still had it during five years, and might
have declared in the same way.

The only matter requiring analysis is the question of the
former owner's position after January 1, 1900, when the act
applied. The action then required to be brought by the former
owner is an action "to recover such land, or to avoid such
deed." An action to recover the land presupposes that the
former owner still is out by a continuance, up to the time when
the suit is brought, of the acts and omissions of the parties
concerned respectively which are made to constitute a dis-
seizin. The requirement that the statutory disseizin should
continue until the action was brought is further shown by

the word "said" in the phrase "unless commenced within said twenty years," to which "or before January one, nineteen hundred," is the alternative. Said twenty years are the years during which the disseizor has been paying taxes and holding possession. If between 1895 and 1900 the former owner had been paying the taxes and doing acts indicative of ownership he would be seized by the very terms of the statute. He would have no occasion to sue, and we hardly understand it to be suggested that he could be sued on the strength of a disseizin satisfying the statute during the twenty years before it was passed, but ending in 1895. If such a suggestion should be made it would be disposed of by recalling again that for five years after the enactment, for purposes of suit at least, he stood constructively seized by force of § 4, whenever apart from the statute he would not have been disseized. Of course therefore he was not disseized retrospectively before the date of the act. It is still more absurd to suppose that the act meant that if he had paid the taxes and done acts of ownership, so that he was not merely constructively but actually seized during the five years, his title was to vanish when that time had elapsed.

The discussion is narrowed, then, to the consideration of an action begun, as this was, after January 1, 1900, when the defendant has held that statutory possession for the five years following the act and for fifteen years before. If the plaintiff had brought a real action instead of the present suit, he would have been barred if the statute is good. The plaintiff says that the counting of the fifteen years before the enactment makes the statute bad. But suppose that the statute had enacted simply that if the conditions of § 1 should be maintained from the date of the act until January 1, 1900, and no action brought, the former owner should be barred, there can be no question that it would have been valid. It was not and could not be argued that a statute of limitations allowing nearly five years would be unreasonably short. *Turner* v. *New York*, 168 U. S. 90; *Terry* v. *Anderson*, 95 U. S. 628.

But, if such a statute would be constitutional, the requirement of a continuance of similar conditions for a time before the statute long enough to make twenty continuous years when taken with the five years following it was a pure advantage to the plaintiff, a further condition which did him only good. It was not argued that the statute was invalid because a less time was allowed to persons in the plaintiff's position than to those whose twenty years should begin to run after the statute went into effect. Similar provisions are common and seem to have been before the court in *Terry* v. *Anderson* and *Turner* v. *New York, supra,* and in *Koshkonong* v. *Burton,* 104 U. S. 668.

Some objection was made to the effect given to a tax deed in the first part of the section. But that is not before us. We see nothing to indicate an intent to go beyond the law. *Marx* v. *Hanthorn,* 148 U. S. 172. As to the possibility that the taxes may have been assessed unlawfully, or the recorded deed under which the defendant claims forged, it is admitted that such matters might be proved. As they are public facts, give color to the overt acts done upon the land and must be accompanied by a necessarily conscious omission of the plaintiff to pay taxes or do any acts of ownership, we see nothing to hinder the legislature making them sufficient, *prima facie* at least, to set the statute running and to put the former owners to a suit.

The act as we construe it does not infringe the Fourteenth Amendment. We understand our construction to agree with that adopted by the Supreme Judicial Court of the State. That court says of the statute, "it is not only not retrospective, but is distinctly made prospective only in its operation, and the reasonable period of five years after the date of the enactment is allowed during which all controversies respecting such titles might be adjusted according to 'the principles and the nature of those facts by means of which those titles had existed' before the passage of the act." Of course if the statute as construed by the state court is constitutional we follow its

construction. *Tampa Water Works Co.* v. *Tampa,* 199 U. S. 241, 243. We have made some little analysis of the words simply because the state court went into no detail.

*Judgment affirmed.*