CLASSEN et al. v. FREEMAN et al.
(No. 283–3530.)

(Commission of Appeals of Texas, Section B.
Feb. 1, 1922.)

1. Wills ⊗⇒571—Will held to devise life policies to testator's wife.

Husband's will, providing that wife "shall take absolutely free of the provisions of this will" proceeds of described insurance policies "payable to her," *held* to devise proceeds to wife, though husband after execution of will made his estate, beneficiary of described policies, and though testator also devised his estate to executors in trust for wife, with remainders over to named persons, and authorized trustees to immediately take possession of his estate, "including the full amount of all life insurance (except the policies which are payable to my wife) and mentioned in" item devising such described policies to wife.

2. Wills ⊗⇒471 — Specific provisions control general provisions.

Specific provisions of a will control its general provisions.

**3. Appeal and error ⊱909(4)—Testator presumed a man of at least average intelligence, in absence of evidence to contrary.**

The Supreme Court must assume, where the record discloses no evidence to the contrary, that testator was a man of at least average intelligence.

Error to Court of Civil Appeals of Third Supreme Judicial District.

Suit between L. F. Freeman and others and Mrs. Geraldine Classen and others. Judgment for the latter was reversed, and judgment was rendered for the former by the Court of Civil Appeals (223 S. W. 300), and the latter bring error. Judgment of the Court of Civil Appeals reversed, and that of District Court affirmed.

J. N. Gallagher, of Waco, for plaintiffs in error.

Witt, Terrell & Witt and Williams & Williams, all of Waco, for defendants in error.

POWELL, J. The case has been admirably stated by the Court of Civil Appeals as follows:

"This suit involves the proper construction of the will of L. F. Freeman, deceased. In the first item of said will, Freeman constituted C. M. Seley and J. H. Riley the independent executors of his will and joint trustees of his estate for the use and benefit of his wife, Geraldine Freeman, now Geraldine Classen. The second item of the will directs that all his just debts shall be paid by his executors and trustees.

"The only items of said will necessary to set out are items 3, 4, and 5, and the codicil to said will, which are as follows:

"'Item 3. Subject only to the provision in item 2 hereof, I give, devise and bequeath unto my said executors and trustees, C. M. Seley and J. H. Riley, to be held by them under the terms hereof in trust for the sole use and benefit of my beloved wife, Geraldine Freeman, during the period of her natural life, all of the property and estate of every nature, real, personal and mixed, of whatever consisting, of which I may die seized and possessed, to have and to hold the same to them, the said C. M. Seley and J. H. Riley, as joint executors and trustees for the purposes aforesaid, with the remainder after the death of said Geraldine over to my brothers and sisters or their children, as provided in item 8 hereof.

"'Item 4. At my death the said C. M. Seley and J. H. Riley, as such joint executors and trustees, shall cause this will to be duly probated and shall immediately take possession of all of my estate, real, personal or mixed, including the full amount of all life insurance (except the policies which are payable to my wife Geraldine, and mentioned in item 5 hereof), and hold, manage and control my said entire estate as to them may seem best and in compliance with the other provisions of this will, so long as my said wife Geraldine shall live.

"'Item 5. Beginning one year after the date of my death, my said executors and trustees shall promptly and continuously pay out of my estate to my said wife, Geraldine, so long as she shall live, the sum of ($500.00) five hundred dollars per month, payable upon the first day of each month, etc.

"'I make no provision for the payment of anything to the said Geraldine during the year first following my death, because I now carry, and shall continue to carry, for her use and benefit, the sum of ten thousand five hundred ($10,500.00) dollars of insurance on my life which is payable to her, and which she shall take absolutely free of the provisions of this will. The policies so carried are as follows: No. 135548 in the Ætna Company for $1,000.-00; No. 427931 in the Ætna Company for $1,-000.00; No. 41915 in The Reliance Life for $1,000.00; No. 31101 in the Bankers' Reserve Life for $2,500.00; No. 481707 in the Union Central Life for $2,500.00; and No. 483558 in the Union Central Life for $2,500.00. All of said policies are payable to my said wife Geraldine and the proceeds thereof will be sufficient for all her needs during the said year.'

"The codicil to said will reads as follows:

'Sept. 16, 1916.

"'I hereby confirm my will dated June 17, 1916, with the exception that I now direct that my wife shall be paid $400.00 instead of $500.00 per month, and I direct that this be attached to my will as a codicil.'

"The executors collected all of the policies mentioned in item 5. The proceeds of the first three of said policies for $1,000.00 each are claimed both by the residuary legatees and the appellee Mrs. Classen. The executors answered that they held the money collected on these policies, to be paid over by them to whomsoever the court should direct.

"The trial court held that the proceeds of these policies shall be paid to the appellee. The correctness of this holding depends upon whether or not the policies mentioned were devised to appellee. If not, by virtue of item 3 they were devised to the executors, for that item devised to the executors all of his property and estate of every nature, subject to the trust created by the will."

The Court of Civil Appeals held that the insurance policies in issue were not devised by the will to the wife of the testator. For instance, that court says:

"On the contrary, we hold that it was not the intention of Freeman to devise these policies to his wife, but that he recognized the fact that they would upon his death be her separate property, for the reason that she was the beneficiary therein named."

Between the execution of the will proper and its one and only codicil, Freeman had changed the beneficiary in three of the policies mentioned in the will, making his estate, rather than his wife, the beneficiary in each instance. Therefore the Court of Civil Appeals held that those three policies, after such change, became a part of his estate and should be governed by item 3 of the will.

⊱For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

So holding, that court reversed the judgment of the trial court, and rendered judgment in favor of the residuary legatees. See 223 S. W. 300.

[1] The sole point in this case is whether or not the Court of Civil Appeals erred in holding that the will in question did not, by its terms, devise to the wife of the testator the three life insurance policies involved in this suit. We think that court did err in said holding, for we are of the opinion that by the express terms of the will itself the moneys accruing under the policies of insurance in question were the property of the wife of the testator. She was made the legatee of the proceeds of such insurance.

[2] It is an elementary principle of law that specific provisions of a will control its general provisions. As we construe the will in suit, item 5 thereof was a specific provision devising all the insurance policies therein mentioned to the wife absolutely free of other provisions of the will, and that item 5 governed and became an exception to and a limitation upon item 3 of the will, wherein the testator's property generally was bequeathed and devised, subject only to the payment of his debts, to his executors, in trust for his wife, with remainder over to defendants in error, L. F. Freeman, and others.

The Court of Civil Appeals admits the correctness of the contention that a specific provision of a will controls a general one, but says that is only true when the special provision is clear. Accepting as correct the limitation placed upon the rule by the Court of Civil Appeals, we are still decidedly of the opinion that item 5 is clear and meets the test.

Items 3 and 4 of the will provide for the control and management by certain executors of the bulk of the estate of the testator, during the lifetime of his wife, so that she may be paid a monthly stipend as long as she lives. In item 4, Freeman expressly provides that the insurance policies listed in item 5 shall not become a part of that trust fund, although his insurance, exclusive of the policies so mentioned in item 5, were to be a part of that fund.

In item 5 the testator makes provision for his wife. He first directs that his executors, out of his estate held in trust by them, shall pay to his widow the sum of $500 per month promptly upon the 1st day of each month as long as she shall live, and such payments to begin one year after his own death; then, as a further part of said item, he explains why the beginning of the monthly payments was so postponed. He says:

"I now carry, and shall continue to carry, for her use and benefit, the sum of $10,500.00 of insurance on my life which is payable to her, and which she shall take absolutely free of the provisions of this will."

Immediately follows an inventory of the six policies aggregating said sum of $10,500, and including the three policies in suit. He winds up item 5 of his will by stating that he considers the proceeds of said six policies sufficient for all her needs during said first year after his death.

The language in item 5 is clear and free from ambiguity. It is absolutely consistent with all of the provisions of his will. He was giving his wife absolutely, and free from all other restrictions of his will, this sum of $10,500, evidenced by the six insurance policies. We find it difficult to see how he could have more completely or clearly devised these policies to her. He inventoried them by a definite description. He gave the aggregate amount thereof. He said they were for her benefit, and would always be, and he directed that she should take them absolutely free of the provisions of this will. It is quite true that the intention of a testator is of prime importance in the construction of his will, but it is equally true that a man is presumed to intend the ordinary and usual meaning of what he says in plain language. When he expresses himself in clear language, free from ambiguity, his written words should not be overridden by some other alleged intention on his part, based upon pure conjecture arising from outside circumstances. We do not think the law would permit that. When the provisions of a will are complete within themselves and perfectly clear, we cannot agree that they should be nullified by mere inferences and assumption gathered from and supported only by a circumstance entirely outside the will.

The provisions of item 5 of the will were not merely recitative and explanatory. They were more than that, for they were clearly testamentary, as a reading of them we think will show. He made three provisions for his wife: The insurance policies listed in item 5; the monthly stipend already described; the use of the homestead as long as she cared to occupy it as such.

In the very next item of his will, No. 6, the testator provided for her occupancy of the home. When she ceased to use it as such, he provided that the homestead property should thereupon pass into the hands of the executors under the terms and provisions of the will. The direction that the wife shall take said policies absolutely free of the provisions of the will, and the direction that the homestead shall, upon abandonment by the wife, pass into the hands of the executors under the terms and provisions of the will, show, we think, conclusively, that the insurance in suit and the homestead were bequeathed to the wife by the will, the policies of insurance absolutely, never to be subject to the other terms, trust, and limitations of the will, and the use of the homestead to become subject to such terms

of trust and control, only upon abandonment of the same as a home by her.

We think what we have already said disposes of the issue involved and is conclusive. But, if we consider the circumstance which the Court of Civil Appeals thought placed the insurance in question beyond the control and ownership of the wife, we are equally convinced that the circumstances preponderate in favor of the judgment of the district court. The sole circumstance relied upon by the Court of Civil Appeals is the action of the testator in changing the beneficiary in the policies in suit, and being three of the six mentioned in item 5 of the will, so as to make the estate, rather than the wife, the beneficiary therein. The Court of Civil Appeals says that act, which came about two months after the original will was executed, showed rather clearly that item 5 was not a bequest, but only an explanation, and that he was simply recognizing her right to the policies for the reason that they would be her separate property at the time of his death, if still in force, with herself as the beneficiary. We cannot agree with this reasoning. In the first place, there is not a word in the entire will that shows the testator had in mind the nice legal distinctions relative to separate and community property. He was not relying upon the law to protect his wife. If so, he would not have found it necessary to mention the policies at all. They would have been hers anyway, if the beneficiary had not been changed. So it was with her use and control of the homestead. She could have occupied it by virtue of the law, and independent of the will. But he did not leave either of these matters to the law. He seemed to perfer to take care of her in a personal way. He expressly provided for her, and we are unwilling to deprive her of the protection he provided, upon a mere guess that he was only recognizing some legal right she had.

Not only so, but the wife, when the will was written, had no vested right in any of the insurance policies. The testator had them all in his possession. He was authorized to change the beneficiary in any of them without the wife's knowledge or consent. In fact, he did so. He knew he had that right. He exercised it. However, in his will, he did not say she would always be named as the beneficiary in the policies, but he did say that they would always be carried for her benefit, and that she should take them absolutely. He did not say that she should take them provided she continued to be designated as the beneficiary therein. As heretofore said, the wife had no vested right of separate property in any of the six policies, until the testator's control and authority over them ended with his death.

The widow is not required to speculate with reference to what purpose actuated the testator in subsequently changing the beneficiary in the three policies in suit so as to make them payable to his estate. Several possibilities in this connection occur to us, but we would not care to grope in the dark in the field of conjecture and hazard a guess as to which of our theories might be correct. We do know that his act did not revoke the will, nor modify its provisions. We are also convinced that the testator did not intend this change in the beneficiary to have the effect given it by the Court of Civil Appeals. We feel sure this is true, because of his later conduct, to which we shall now refer.

[3] The change in the beneficiary was made about one month before he wrote the codicil of September 16, 1916, hereinbefore quoted. We must assume, as the record discloses no evidence to the contrary, that the testator was a man of at least average intelligence. In writing his codicil, it is to be assumed also that he was perfectly familiar with the terms of the original will. It is particularly clear to us that he had his mind especially fixed on his wife when he penned the codicil, and he must have had particularly in view those portions of the will which affected her rights. If he had intended to deprive her of $3,000 of insurance mentioned in item 5 of his will, he could have very easily done so in express language, and not left it to mere conjecture. But he did not do so. On the contrary, in order that there might be no doubt about his provision for her, he expressly confirmed his original will, with but one exception. In that exception, he reduced her monthly allowance from $500 to $400. It would have been the most natural thing in the world for him, in that same connection, to have reduced his insurance allowance from $10,500 to $7,500. But he did not do so, and we are unwilling to do it for him, and thereby read into the will, as a result of a mere guess upon our part, a provision which is entirely inconsistent with his own express language. As we view it, if he had intended to reduce her insurance allowance, he, himself, passed up a most excellent opportunity to say so. He died about one month after he penned the codicil to his original will, and the codicil remained, up to the time of his death, the only thing he ever said which affected his will. Consequently, the very last word he ever uttered, not only did not reduce the insurance allowance provided for in his original will, but this expression from him had the same effect as if he had expressly reiterated all of the provisions of the original will, which we have already shown clearly provided that all six of these policies should be her property. In fact, as we read the codicil we can hear him repeating his statement that he was carrying at that very time $10,500 of insurance absolutely for his wife. The lan-

guage of this codicil, coming 30 days, after the circumstance of the change in the beneficiary in the policies, convinces us that he did not intend by such change to alter the will as originally written. Evidently he looked upon that change as a mere incident, and of no material importance.

If the change of the beneficiary had any effect whatever, it was nothing more than a change in the form of the property bequeathed, and such a change subsequent to the making of a will does not prevent the operation of the provisions of the will, and the property in its changed form likewise passes to the legatee. 40 Cyc. p. 1046, par. C.

Consequently, considered from either angle heretofore discussed by us, we are of the opinion that the testator gave his wife, plaintiff in error herein, the moneys accruing under the policies in question, and that the district court was correct in so construing the will and in ordering the executors to pay over to the testator's widow the proceeds of the three policies in suit.

Therefore we recommend that the judgment of the Court of Civil Appeals be reversed, and that of the district court affirmed.

CURETON, C. J. The judgment recommended in the Report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

⬳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes