**Modern Woodmen of America v. James B. Parido, Appellee. Carl W. Ernest, Administrator of the Estate of Matilda Parido, Deceased, Appellant.**

**Gen. No. 8,220.**

Opinion

filed July 2, 1928,

M. A. Brennan and W. W. Whitmore, for appellant; Stella E. Whitmore, of counsel.

Thomas S. Weldon, for appellee.

Mr. Justice Shurtleff delivered the opinion of the court.

On September 29, 1927, the Modern Woodmen of America filed its bill of interpleader in the circuit court of McLean county against appellant and appellee, to require them to interplead for the purpose of legally determining which of them is entitled to the benefits payable under its benefit certificate issued to David Parido in his lifetime. David Parido was a member in good standing of the petitioning order and died, while such member, as a result of injuries received on August 10, 1927, when an interurban car struck the automobile in which said David Parido, his wife, Matilda Parido, and his mother, Martha Parido, were riding, and from the results of which accident all of the occupants of said car died. Proofs were submitted showing that at the time of the accident David Parido died instantly and that his wife, Matilda Parido, died about 30 minutes later while she was being carried to a hospital in an ambulance. Appellant Ernest is the duly appointed administrator of the estate of Matilda Parido, deceased, and claims the fund as the beneficiary named in said benefit certificate. Appellee James B. Parido is the father of said David Parido, deceased, who died leaving no children or mother him surviving, and appellee claims the fund under a clause in the certificate providing for the disposition of the fund in case the deceased and his said wife, Matilda Parido, died in a "common disaster." David Parido, in his application for membership in the order, named his wife, Matilda Parido, as beneficiary and the certificate provided: "That in case of the death of David Parido while a member of the society in good standing

his beneficiary, hereinafter named, shall be entitled to participate in the benefit fund of the society to the amount of $1,000 without interest, to be paid to said beneficiary, to wit, Matilda Parido, related to said member as wife.''

Section 51 of the by-laws of the order, under which appellee claims title to the fund, so far as pertinent to this case, provides as follows:

"If the death of a beneficiary of any member heretofore or hereafter adopted shall occur at the same time, or in a common disaster, or prior to the death of such member . . . then the amount to be paid under the benefit certificate to said deceased or disqualified beneficiary, or beneficiaries, shall be payable to the surviving qualified beneficiary or beneficiaries, if any there be, share and share alike, or if no beneficiary survives him, then to the widow; if no widow, to his children, including his legally adopted children, and in case there are deceased child or children, the child or children of such shall take the share of such deceased parent; if no child, or child or children of a deceased child or children, to the mother; if no mother, to the father; if no father," etc.

There were proofs presented and a substantial agreement of the parties as to all the facts in the case and a decree in the court below, awarding the fund to the father, based upon section 51 of the by-laws and upon the theory that David Parido and his wife, Matilda, regardless of the question of survivorship, each died in a "common disaster," and the record is brought to this court for review.

A considerable space is occupied in the briefs discussing the exact interpretation of the word "in" in by-law number 51, and also as to the mental wish or desire of the deceased certificate holder in case he knew that his wife would survive him but an exceedingly brief space of time. We receive little aid from

any of these arguments. If the term "common disaster" is to receive a legal definition and be construed as a common "blow," "infection" or "injury," which may produce its results upon various persons and at various periods of time and become a medium of establishing titles to property by the collectiveness of the "blow," "infection" or "injury," then titles and rights are to be thrown into utter confusion and depend for periods upon contingent results. If the disposition of the funds provided for in said certificate is dependent upon appellant's intestate dying from the result of injuries received in a "common disaster" with her husband, as those terms are used in common parlance and as contended by appellee in support of said decree, then it makes no difference whether appellant's intestate survived her husband 30 minutes or 30 years, if she did in fact receive the injuries from which she died in such "common disaster" as the term is freely used, she could never become a beneficiary under the certificate in question. The rule may work harshly in individual cases, but the great beauty of the law is the universality of its operation. upon citizens and subjects alike. The terms in by-law No. 51, "If the death of a beneficiary of any member heretofore or hereafter adopted shall occur at the same time, or in a common disaster, or prior to the death of such member," etc., have a well-defined legal meaning in the opinion of this court, and were so used by the petitioning order. The courts have construed the term "deaths . . . in common disaster" to mean the same thing and be identical with "deaths at the same time." (*Middeke v. Balder,* 198 Ill. 590, 594; *Wall v. Pfanschmidt,* 265 Ill. 180, 182; *In re Wilbor,* 20 R. I. 126, 51 L. R. A. 863, and note; *McGowin v. Menken,* 223 N. Y. 509, 119 N. E. 877, 5 A. L. R. 794; *Fleming v. Grimes,* 142 Miss. 522, 107 So. 420, 45 A. L. R. 618.) Based upon these technical terms, the courts construe

a presumptive rule of evidence as to survivorship
which is substantially of universal application in this
country and England.

In a somewhat hasty examination we have found
only two instances where the courts clothe the term,
"common disaster," with a legal meaning. We find it
used in shipping, under the principle of general aver-
age as applied to a maritime common adventure (36
Cyc. 373), and as applied to "deaths." "Where sev-
eral persons perish in a common disaster, . . . there
is no presumption as to survivorship, but it is a fact
to be proved by the party asserting it, and this was the
rule at common law" (17 Corpus Juris 1179), and so
it was held in *Middeke v. Balder, supra:*

"When two or more persons lose their lives in a
common disaster, by the civil law a number of pre-
sumptions of survivorship arise, based on age, sex and
condition of health, but there is no presumption that
they all died simultaneously. At common law there is
no presumption of survivorship, and if survivorship is
claimed it must be proved, and the one having the bur-
den of proof of such survivorship must fail if he can-
not prove it. While there is no such presumption, the
practical result of this rule is that the parties are
treated as having all died at the same instant of time,
and that no one of those thus dying synchronously
takes from any of the others dying in the common dis-
aster, by reason of the other's death. This rule was
practically settled in England in 1855 in the leading
case of *Underwood v. Wing,* 4 DeG., M. & G. 633, heard
on appeal from the Master of the Rolls. (*Underwood
v. Wing,* 19 Beav. 459.) All the previous cases and
authorities were cited and the subject was thoroughly
discussed. Underwood, his wife and three children all
perished at sea on the voyage from London to Austra-
lia. The Lord Chancellor said: 'The question in the
present case is, whether, the plaintiff (one Underwood)

being the next of kin or representing the next of kin, Mr. Wing shows a title depriving her of that to which, in the absence of a valid will, she is entitled. That depends, first of all, on the terms of the will, and the will gives the property to Mr. Wing ''in case my wife shall die in my lifetime.'' Then comes the question, on whom does the burden of proof rest to show whether the wife did or did not die in the testator's lifetime? I think, the principle once being admitted that the *prima facie* title is in the next of kin, that it must rest on the person who claims the property under a bequest giving it to him in that particular event. It is not for the next of kin to show that the wife did not die in her husband's lifetime, but the person who claims under the disposition must show, not that probably it might be one way or the other, but that that state of circumstances did in fact occur which entitled him, according to the language of the will, to say that the wife did die in her husband's lifetime.' ''

In the many cases reviewed in *Middeke v. Balder, supra,* and in the note to *In re Wilbor, supra* (51 L. R. A. 863), one is led to the impression that in law a common disaster occurs only where different ones perish, and there is no testimony of witnesses or circumstances to determine which survived the longer. The reason of the rule is stated in 17 Corpus Juris 1180, as follows: ''It is not impossible for two persons to die at the same time, and when exposed to the same peril under like circumstances, it is not as a question of probability very unlikely to happen. At most the difference can only be a few brief seconds. The scene passes at once beyond the vision of human penetration, and it is as unbecoming as it is idle for judicial tribunals to speculate or guess whether during the momentary life struggle one or the other may not have ceased to gasp first, especially when the transmission of title to property depends upon it, and hence in the absence

of other evidence the fact is assumed to be unascertainable, and property rights are disposed of as if death occurred at the same time. This is done not because the fact is proved, or that there is any presumption to that effect, but because there is no evidence, and no presumption to the contrary."

Thus we find an arbitrary rule laid down defining a legal common disaster where different persons perish in the same or common disaster and there are no proofs to determine which, if either, survived the other, the law determines that they perished at the same time. "Dying at the same time" or "dying in a common disaster," are merely, in law, different statements of the same situation or result, and were so used in the language of by-law No. 51.

There are other "common disasters" not in a legal sense, however, like the case at bar. "The earliest case in which the question of survivorship between persons dying at the same time arose was in 1596, and there was evidence by which the fact could be and was determined. *Broughton v. Randall,* 1 Cro. Eliz. 502, Noy, 64. In this case a father and his son were both hanged from the same cart. They were joint tenants in certain real estate, and the widow of one of them claimed and established her dower right upon the ground that her husband lived longest. The two reports differ as to whether it was the son who lived longest and his widow who succeeded, or whether the father survived to the benefit of his widow; but both agree on the determining piece of evidence, namely, that one victim was noticed to move his feet or shake his legs after the other's muscles were stilled in death." (*In re Wilbor,* 51 L. R. A. 865.) In such cases and in the case at bar, survivorship is established by proofs. Section No. 51 provides for cases where persons die at the same time. This need not occur in a "common disaster," but the result would have been the same. The

section also provides for deaths occurring in a "common disaster." By this is intended the legal "common disaster" where there are no witnesses or proofs to establish a survivorship, and the section provides for a death of the beneficiary prior to the death of the member. It is plain to be understood that the petitioner in using the term "common disaster" meant and intended to provide for a case where both parties perished and there were no proofs to establish a survivorship and did not intend to change his beneficiary merely because each of them received an injury finally resulting in death at the same time. Appellant's intestate, having survived her husband, under the terms of said certificate her rights in said certificate attached and became effective immediately upon the member's death. (*Freund v. Freund,* 218 Ill. 189, 205; *Columbian Circle v. Auslander,* 302 Ill. 603, 606; *Meyers v. Modern Woodmen of America,* 205 Ill. App. 45, 46), and appellant is entitled to the proceeds of said certificate.

The decree of the circuit court of McLean county is reversed and said cause remanded to the circuit court of McLean county with directions to enter a decree providing that said funds shall be paid to appellant as administrator, who shall recover his costs.

<em>Reversed and remanded with directions.</em>