In the Matter of the Estate of GEORGE K. DAVIS, Deceased.

Surrogate's Court, New York County, February 21, 1946.

*Mitchell, Capron, Marsh, Angulo & Cooney* for City Bank Farmers Trust Co., petitioner.

*Joseph Trachtman* for Marie L. Weller, respondent.

*Alley, Cole & Grimes* for Louise I. Grimes, respondent.

*Hill, Lockwood & Redfield* for Guaranty Trust Company of New York, as trustee under agreement made by George K. Davis, respondent.

*Richard Steel* for Arlene D. Ireland and others, interveners, respondents.

DELEHANTY, S. In this accounting proceeding the personal claim of the accounting fiduciary is allowed in the amount scheduled in the account. The apportionment of estate taxes set forth in schedule J of the account is approved. As a result the account is now ready for settlement unless the distributees of deceased are entitled to a hearing respecting the account.

These distributees assert that perforce the operation of paragraph eighth of deceased's will deceased died intestate as to a portion of his property. Claiming the status of interested parties because of this claimed right of succession as distributees they ask leave to intervene in the accounting proceeding and to file objections. It was clear despite the form of the application that what they seek is a construction of the will of deceased. By appropriate stipulation the parties have stated the issue as one of construction and have stipulated facts which permit the court to make a decision on this issue.

The eighth paragraph of deceased's will says: " If any beneficiary or beneficiaries under this will, and I, should die in a

common accident or disaster or under such circumstances that it is doubtful which of us died first, then all the provisions of this will shall take effect in like manner as if such beneficiary or beneficiaries had predeceased me." Prior text in the will had provided an outright gift of one half the residuary to the wife of deceased. The contention of deceased's distributees is that under the text of paragraph eighth of the will just quoted the wife of deceased must be deemed to have predeceased him, with the consequence that the gift of one half the residuary failed and such half passes as intestate property.

For the purpose of a ruling it is conceded that deceased at the time of his death was seventy-two, that he had married in 1935, that his wife was forty-five at her death, that deceased made his will in January, 1942, that deceased's wife at the date of the will and prior thereto had to the deceased's knowledge suffered and continued to suffer from high blood pressure, that deceased died of a heart attack on March 27, 1943, at 4:00 P.M., that deceased's wife died on March 28, 1943, at 4:00 A.M. of a cerebral hemorrhage and that both deaths occurred without the interposition of any physical violence. It is reasonable to assume that the emotion caused to deceased's wife by the shock of her husband's death and the stress imposed upon her in making arrangements for his funeral were contributing causes if not the direct cause of her death from the cerebral hemorrhage which she suffered.

The distributees of deceased argue that there occurred the "disaster" envisaged by the quoted text of deceased's will. They concede that the order of deaths is not doubtful. They conceded that there was no "common accident" but they say that deceased's language is to be interpreted against the background of facts outlined above and that the word "disaster" was used by deceased to cover the situation which occurred. This contention respecting the meaning of the will of deceased requires consideration of the meaning which has been ascribed by the authorities to the word "disaster" or to the words "common disaster".

The courts have been required to consider these words in cases which concerned interests in estates, which concerned the meaning of clauses in wills and which concerned rights under *inter vivos* agreements. The words have no different connotation in the construction of wills than they have in contract controversies (*Dunn* v. *New Amsterdam Casualty Co.*, 141 App. Div. 478, 479–480; see, also, *Matter of Fowles*, 222 N. Y. 222; *Newell* v. *Nichols*, 75 N. Y. 78; *St. John* v. *Andrews Institute,*

191 N. Y. 254 — dealing with will constructions. See, also, *Matter of Burza,* 151 Misc. 577; *Matter of Hayward,* 143 Misc. 401 — dealing with rights to administer. See, also, *McGowin v. Menken,* 223 N. Y. 509; *Modern Woodmen of America v. Parido,* 253 Ill. App. 68, affd. 335 Ill. 239 — dealing with insurance rights. See generally on the subject 5 A. L. R. 798, 45 A. L. R. 622; 113 A. L. R. 881.)

In the *Parido* case (*supra*), the proof was that an insured and his wife died as a result of the same automobile accident. The death of the wife was shown to have occurred thirty minutes after that of her husband. The intermediate Illinois appellate court said in its opinion that it found only two instances in which the term " common disaster " had been given a legal meaning. That intermediate court then defined the term thus (p. 75): " By this is intended the legal ' common disaster ' where there are no witnesses or proofs to establish a survivorship, and the section provides for a death of the beneficiary prior to the death of the member. It is plain to be understood that the petitioner in using the term ' common disaster ' meant and intended to provide for a case where both parties perished and there were no proofs to establish a survivorship and did not intend to change his beneficiary merely because each of them received an injury finally resulting in death at the same time." This definition was taken in substance into Words and Phrases (Vol. 8, Perm. ed., p. 69).

In *Matter of Bull* (175 Misc. 197, 200) this court had occasion to deal with a will which contained text similar to that here under consideration. This court said that such text had " no relation to deaths occurring from so-called natural causes unrelated to violence or accident affecting both " the maker of the will and her spouse. The case of *American Trust Co. v. Eckhardt* (331 Ill. 261) cited by the distributees does not aid their cause. The language of the will there under consideration was held to envisage the survival by thirty-six hours of one spouse after the death of the other. But the difficulty with the case from the viewpoint of the distributees is that the text of the will under consideration (not fully quoted in the brief of the distributees) said: " In the event that our deaths should occur simultaneously, or approximately so ". The decision of the court was expressly based upon the phrase " or approximately so ". (Italics supplied.) No such language is here present.

The will of deceased evidences careful and instructed draftsmanship and there is no warrant for giving to its words any

peculiar significance. Its text requires on the contrary a holding that its words and phrases were designed to convey the meanings usual to the words employed. Having in mind the State of the authorities and the language of the will the court holds that the sequence of deaths of deceased and his widow did not invoke the terms of paragraph eighth of deceased's will. The court holds that the outright gift to the widow of deceased under paragraph fifth of his will was fully effective. The court holds that the intervening parties have no right to share in the estate and that the construction of deceased's will contended for by them is contrary to the true meaning and intent of deceased's will.

Accordingly a decree may be submitted on notice construing the will, adjudging that the intervening parties are not interested in the estate and otherwise settling the account.