

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-21-00365-CV

### IN RE THE JOHN O. YATES TRUST

From the Probate Court No. 1, Bexar County, Texas
Trial Court No. 116847
Honorable Oscar J. Kazen, Judge Presiding

Opinion by:     Liza A. Rodriguez, Justice

Sitting:         Beth Watkins, Justice
                 Liza A. Rodriguez, Justice
                 Lori I. Valenzuela, Justice

Delivered and Filed: December 28, 2022

AFFIRMED

Trust beneficiary Robert Mack Yates ("Robert") appeals from a declaratory judgment construing the John O. Yates ("Yates") testamentary trust ("the trust"). The judgment declared that Yates's will authorizes the trustee, with the consent and approval of an advisory committee, to sell part of the trust corpus—real property located in Bexar County, Texas—and to allocate the sale proceeds to the trust's principal account. We affirm.

### BACKGROUND

On July 6, 1953, Yates executed a will providing that his residuary estate be placed in trust for his brothers and sisters and their issue per stirpes. Although the will created a trust for each of Yates's siblings and their issue, it directed that the trusts be administered as an undivided unit. It further stated that the trusts would continue until twenty-one years after the death of the last niece

or nephew alive at the time of Yates's death, at which time the trusts would terminate, and the trust corpus would be distributed to the then-beneficiaries, the lineal descendants of Yates's siblings.[1] The will also called for the creation of a trust advisory committee, consisting of designated family members, and instructed the trustee to consult with the advisory committee on important matters concerning the administration of the trusts.

After Yates's death on August 30, 1964, his will was admitted into probate and his residuary estate, which primarily consisted of various mineral interests and real property, was placed in trust. The residuary estate included the real property in Bexar County, which Yates referred to in his will as "my Bexar County home" and "my ranch home in Bexar County, Texas." Over the next five and a half decades, the real property and the mineral interests remained part of the trust principal and the trust income was paid to the trust beneficiaries.

On February 13, 2020, the trustee, Frost Bank, San Antonio, filed an original petition seeking two declarations regarding the administration of the trusts.[2] First, the trustee asked the trial court to determine if Yates's will authorized the sale of the real property in Bexar County ("the Bexar County ranch"). Second, the trustee asked the trial court to determine if the will required the proceeds from the sale of the Bexar County ranch to be allocated to the trusts' principal account.

Robert appeared in the suit and argued that the will's terms prohibited the sale of the Bexar County ranch. Alternatively, Robert argued that even if the will authorized the sale of the Bexar County ranch, it required the sale proceeds to be considered income rather than principal.

---

[1] Because the last nephew alive at the time of Yates's death died on November 11, 2018, the trusts will terminate on November 11, 2039, and the principal will be paid to the beneficiaries at that time.

[2] Two current advisory committee members, John Griffin Yates, Jr. and Hugo Edwin Auler, joined in the trustee's original petition.

After a non-evidentiary hearing, the trial court rendered a final judgment declaring: (1) the will authorizes the trustee to sell the Bexar County ranch, and (2) the sale proceeds from the Bexar County ranch must be allocated to the trusts' principal account. On appeal, Robert challenges both declarations.

## RULES OF CONSTRUCTION

The construction of an unambiguous will is a question of law, which we review de novo. *Younger v. Younger*, No. 07-19-00039-CV, 2020 WL 6253237, at *2 (Tex. App.—Amarillo Nov. 17, 2020, no pet.). A will is not ambiguous simply because of a lack of clarity or because the parties offer different interpretations of a term; rather, a will is ambiguous only when the application of established rules of construction leave its terms susceptible to more than one reasonable meaning. *Estate of Rhoades*, 502 S.W.3d 406, 415-16 (Tex. App.—Fort Worth 2016, pet. denied). If we can give a certain and definite legal meaning or interpretation to the words used, the will is unambiguous, and we construe it as a matter of law. *Id*. at 416.

We apply identical rules to the construction of wills and trusts. *In re Ray Ellison Grandchildren Trust*, 261 S.W.3d 111, 117 (Tex. App.—San Antonio 2008, pet. denied.). In construing a will, we focus on the testator's intent, which we ascertain by looking to its provisions as a whole, as set forth within its four corners. *Stephens v. Beard*, 485 S.W.3d 914, 916 (Tex. 2016). "We determine intent by construing the instrument holistically and by harmonizing any apparent conflicts or inconsistencies in the language." *Hysaw v. Dawkins*, 483 S.W.3d 1, 4 (Tex. 2016). "Ascertaining intent from the four corners of a will requires careful examination of the words the testat[or] chose, and the sense in which the words were used by the testator is the ultimate criterion." *Id*. at 7 (quotation marks/brackets omitted). Our task is to "focus not on what the testator intended to write, but on the meaning of the words he actually used." *Stephens*, 485 S.W.3d at 916 (quotation marks/brackets omitted). "Such words, whether technical or popular, are

construed in their plain and usual sense, unless a clear intention to use them in another sense is present in the instrument." *Id*. (quotation marks omitted). Additionally, we look to the law as it existed at the time the will was executed. *See In re Ray Ellison Grandchildren Trust*, 261 S.W.3d at 118. If possible, we construe the will to give effect to all provisions so that none is rendered meaningless. *Id*. "Fundamentally, there are many rules of law surrounding the construction of a will but there is one over-all rule[:]. . . there is no set rule that will fit the construction of every will, and therefore each case must stand under its own facts." *See Hysaw*, 483 S.W.3d at 8 (quotation marks/brackets omitted).

## DISCUSSION

Although both sides offer differing constructions of Yates's will, neither side argues that it is ambiguous. Because we can give a definite and certain interpretation to the words used in the will, we agree that it is unambiguous and construe it as a matter of law. *See Rhoades*, 502 S.W.3d at 416.

### *Authority to Sell the Bexar County Ranch*

In his first issue, Robert argues the trial court erred by declaring that Yates's will authorizes the trustee, with the consent and approval of the advisory committee, to sell the Bexar County ranch.

Robert directs our attention to article IX(c) of the will, which provides: "*Except as may otherwise be provided herein*, my Trustee or its successor shall not have or exercise the right, power, privilege or authority to sell, convey or dispose of any of the trust property or any part thereof." (emphasis added). Robert asserts that this provision demonstrates that Yates intended to prohibit the sale of trust property. Even though this provision creates a general rule against the sale of trust property, it also states that exceptions may exist. Accordingly, article IX(c) does not resolve this issue.

The language at the center of this issue appears in article IX(m), paragraph two of the will and states in relevant part:

> I direct my Executor and Trustee to pay all taxes, insurance and normal repairs and other expenses in connection with the maintenance of my ranch home in Bexar County, Texas[,] and my ranch in Duval County, but the cost of same shall be chargeable in equal proportions to such one or more of my brothers and sisters or nieces and nephews that shall desire to use the same. *Otherwise, my Executor and/or Trustee shall, with the consent and approval of the Advisory Committee,* **lease or otherwise dispose of** *said properties and the rentals or proceeds shall become part of the income or principal of the trusts created under my Will in equal parts or by stirpes as the case may be.*

(emphasis added). We must determine what Yates intended this language to mean at the time he executed his will.

Robert argues that this language does not authorize the trustee to sell the Bexar County ranch because it does not use the word "sale" to describe the permissible dispositions of the property. However, we reject this approach because it calls for a rigid, mechanical construction of the will, which the law disfavors. *See Hysaw*, 483 S.W.3d at 4 (recognizing that courts favor a holistic and harmonizing approach and reject mechanical rules of construction). In construing a will, we must focus on the meaning of the words the testator actually used and construe them in their plain and usual sense, unless a clear intention to use them in another sense is present in the four corners of the will. *Stephens*, 485 S.W.3d at 916.

A contemporary dictionary definition of the word "dispose" is "[t]ransfer into the hands of another *by sale* or bequest." SHORTER OXFORD ENGLISH DICTIONARY 712 (6th Ed. 2007) (emphasis added). Historically, the term "dispose of" had a well-recognized legal meaning: "[t]o alienate or direct the ownership of property, as disposition by will"; "to pass onto the control of someone else"; "to alienate, relinquish, part with, or get rid of"; "to bargain away"; "[o]ften used in restricted sense of 'sale' only, or so restricted by context." BLACK'S LAW DICTIONARY 557 (Rev. 4th Ed. 1968); *see Phelps v. Harris*, 201 U.S. 370, 380 (1879) ("The expression 'to dispose of' is very

broad, and signifies more than '*to sell*.' Selling is but one mode of disposing of property.") (emphasis in original); *Lowe v. Ragland*, 297 S.W.2d 668, 674 (Tex. 1957) (stating that the power of "full" "disposition" in a will "rather obviously means a power of alienation and one of broad scope without regard to whether it be by sale or gift."); *Moore v. Wardlaw*, 522 S.W.2d 552, 557 (Tex. Civ. App.—Austin, 1975, writ ref'd n.r.e.) ("To 'dispose of' ordinarily means to sell or alienate.").

As these definitions illustrate, the plain and usual meaning of the term "dispose of" encompasses the sale of property. Nothing in Yates's will demonstrates a clear intent to use the term "dispose of" in a different sense. *See Stephens*, 485 S.W.3d at 916. Focusing, as we must, on the meaning of the words Yates actually used in his will, we conclude that the phrase "otherwise dispose of said properties" includes the sale of the Bexar County ranch. *See id.*

The language at issue authorizes the trustee "to lease or *otherwise* dispose of" the property. (emphasis added). Seizing on this phrasing, Robert argues that the pairing of "lease" and "dispose of" "creates a presumption" that the only permissible dispositions of the Bexar County ranch are "in the nature of leasing." We disagree. According to the dictionary, "otherwise" means "in another way, or in other ways; by other means; differently." SHORTER OXFORD ENGLISH DICTIONARY 2035 (6th Ed. 2007). The use of the word "otherwise" before "dispose of" signifies that the other permissible modes of "disposing of" the property are in fact "different" from leasing.

Robert also argues the language at issue here is not an exception to the general "no sale" rule referred to in article IX(c) because it does not expressly contain the words "sale" or "sell." According to Robert, the will's only exception to the general "no sale" rule appears in article IX(g),

which expressly uses the word "sell."[3] However, as previously discussed, the term "dispose of" is broad and encompasses the sale of property. *See Stephens*, 485 S.W.3d at 916 (requiring courts to construe the words used in a will in their plain and usual sense). We conclude the language at issue is an exception to the general "no sale" rule.[4]

Robert also argues that our construction of the phrase "otherwise dispose of said properties" in article IX(m) renders the words "sell" and "convey" in article IX(c) superfluous. Article IX(c) states that the trustee "shall not have or exercise the right, power, privilege or authority to *sell, convey or dispose of* any of the trust property." (emphasis added). Contrary to Robert's argument, our construction of the phrase "otherwise dispose of said properties" does not render any words in article IX(c) superfluous. Again, the term "dispose of" has a broad meaning; "selling" is but one mode of "disposing of" property. Thus, the phrase "sell, convey or dispose of" is akin to "dispose of." The latter is simply a more concise way of expressing the same meaning.

Finally, Robert argues that his proposed construction is mandated by several provisions in the will expressing a general intent to preserve trust property.[5] We recognize that the will expresses an intent to preserve trust property, but we also recognize that this intent is not absolute. Article IX(c) creates a general "no sale" rule, but it also provides that exceptions to the general rule may exist. Furthermore, the exception created in article IX(m) applies to only two trust assets, the Duval

---

[3]Article IX(g) provides: "In the event any part of the Trust Estates shall consist of intangible personal property my Executor and/or Trustee with the advice and consent of the Advisory Committee is given full power to retain, sell, invest and reinvest the same in accordance with the provisions of the Texas Trust Act."

[4]As stated in article IX(m), paragraph two, this exception was triggered when none of Yates's "brothers and sisters or nieces and nephews" desired to use the Bexar County ranch. No one disputes that the triggering event has occurred.

[5]In one provision, Yates states that his "estate consists primarily of mineral interests which should not be sacrificed by sale or otherwise." In another provision, Yates authorizes the trustee "to borrow money . . . and to make such pledges and mortgages . . . as may be reasonably necessary in order to avoid the sale and/or sacrifice of any part of the assets comprising the Trust Estates."

County ranch and the Bexar County ranch. Accordingly, our construction of the language in article IX(m) is consistent with Yates's general intent to preserve trust property.

The trial court did not err in declaring that the language at issue in article IX(m) authorizes the trustee, with the consent and approval of the advisory committee, to sell the Bexar County ranch.

### *Allocation of the Sale Proceeds*

In his second issue, Robert argues that even if the will authorizes the trustee to sell the Bexar County ranch, it requires the sale proceeds to be treated as income rather than principal.

Yates's will provides that, as a general rule, the trusts are to be administered in accordance with Texas's statutory scheme governing trusts. Article IX(a) of the will states: "Except as otherwise expressly provided herein, the administration of the trusts and the rights, powers, duties and responsibilities of the Trustee shall be in accordance with and governed by the terms and provisions of the Texas Trust Act as it now exists or as it may hereafter be amended." This language illustrates that Yates understood that to alter the effect of the Texas Trust Act or any successor statute, he needed to include in his will an express provision doing so.

The current statutory scheme governing trusts, the Texas Trust Code, provides that "money or other property received from the sale . . . of a principal asset" "shall" be allocated to the principal of the trust.[6] TEX. PROP. CODE § 116.161(2).

Robert's argument that the sale proceeds must be treated as income and not principal is based on article IX(m), paragraph one of the will, which states in relevant part: "Although my estate consists primarily of mineral interests which should not be sacrificed by sale or otherwise,

---

[6]The statute in effect when Yates executed his will on July 6, 1953, the Texas Trust Act, contained a similar provision requiring monies received from the sale of a principal asset to be allocated to principal.

*all receipts of money shall, as far as possible, be considered income . . . .*"  (emphasis added). According to Robert, the sale proceeds from the Bexar County ranch must be considered income, unless the trustee proves that it is impossible to do so. We reject this argument.

"The specific provisions [in a will] control over [] general statement[s]." *Perry v. Hinshaw*, 633 S.W.2d 503, 505 (Tex. 1982); *see Classen v. Freeman*, 236 S.W. 979, 981 (Tex. [Comm'n Op.] 1922) ("It is an elementary principle of law that specific provisions of a will control its general provisions."). Article IX(m), paragraph two, which we analyzed at length in our discussion of the first issue, specifically addresses the disposition of the Bexar County ranch. Therefore, article IX(m), paragraph two controls over the general provision in article IX(m), paragraph one stating that "all receipts of money shall, as far as possible, be considered income." *See Perry*, 633 S.W.2d at 505; *Classen*, 236 S.W. at 981.

Article IX(m), paragraph two, which specifically addresses the permissible dispositions of the Bexar County ranch, does not contain any language creating an exception to the general rule set out in article IX(a) that the administration of the trust "shall be in accordance with and governed by the terms and provisions of the Texas Trust Act . . . as it may hereafter be amended." The allocation rule in section 116.161(2) of the Texas Trust Code requires that money received from the sale of a principal asset be allocated to the principal of the trust. *See* TEX. PROP. CODE § 116.161(2). Furthermore, consistent with section 116.161(2) of the Texas Trust Code, article IX(m), paragraph two of the will provides that "the rentals or proceeds" from the lease or disposition of the Bexar County ranch "shall become part of the income or *principal* of the trusts." (emphasis added).

The trial court did not err in declaring that the proceeds from the sale of the Bexar County ranch must be allocated to the trusts' principal account in accordance with section 116.161(2) of the Texas Trust Code.

## CONCLUSION

The trial court's judgment is affirmed.

Liza A. Rodriguez, Justice