FITZGERALD et al. v. AYRES et al.*
(No. 7350.)

(Court of Civil Appeals of Texas. Dallas. June 19, 1915. Rehearing Denied Oct. 16, 1915.)

DEATH ⬤⇒5—WILLS ⬤⇒775—CONSTRUCTION—SURVIVORSHIP—INTENTION.

A husband and wife made their wills, each naming the other as primary beneficiary, but each in the event of prior death of the other naming their foster son as sole beneficiary. They were frozen to death in the same snowstorm. There was no evidence as to which died first. *Held*, that the son would take, there being no presumption as to survivorship or simultaneous death, and, it being the evident intention of both that he should take, the wills would stand as if they contained only the bequest to the son.

[Ed. Note.—For other cases, see Death, Cent. Dig. § 7; Dec. Dig. ⬤⇒5; Wills, Cent. Dig. §§ 1997–2000; Dec. Dig. ⬤⇒775.]

Error from District Court, Dallas County; Kenneth Foree, Judge.

Action by W. H. Fitzgerald and others against R. C. Ayres and L. R. Terry, executors of Willis A. Skinner and of Sallie E. Skinner, deceased. Judgment for defendants, and plaintiffs bring error. Affirmed.

Wood & Wood, W. H. Clark, and W. T. Strange, all of Dallas, for plaintiffs in error. Chas. F. Clint and Chilton & Chilton, all of Dallas, for defendants in error.

TALBOT, J. This suit was instituted in the district court of Dallas county, Tex., by the plaintiffs in error, W. H. Fitzgerald and others, hereinafter called plaintiffs, as the next of kin and sole heirs of Willis A. Skinner and Sallie E. Skinner, deceased, against the defendants in error, R. C. Ayres and L. R. Terry, executors of the estates, respectively, of the said Willis A. Skinner and Sallie E. Skinner, Carnagie Frank Skinner, a minor, and Charles F. Clint, guardian ad litem of said minor, hereinafter called defendants, to recover all the real and personal property belonging to the estates of said deceased persons, which property is fully described in the petition. There is no controversy over the pleadings, and it is unnecessary to set them out. The material facts are as follows: Some of the plaintiffs are the next of kin and sole heirs of the said Willis A. Skinner, and the others are the next of kin and sole heirs of Sallie E. Skinner, and Willis A. Skinner and Sallie E. Skinner were husband and wife. On the 21st day of August, 1911, the said Willis A. Skinner and his said wife died in a snowstorm while ascending, on foot, Pike's Peak, in the state of Colorado, and they were buried in the city of Dallas, Tex., at the same time, on the succeeding Sunday. They had resided in the said city of Dallas a number of years, and had acquired and owned at the time of their death property of the estimated value of $60,000, the larger part, if not all, of which

was situated in said city. The dead bodies of Mr. and Mrs. Skinner were found about a half mile from the summit of Pike's Peak. They were lying almost side by side, and there was snow on the ground. The body of Mr. Skinner was lying on its back, almost touching that of his wife, with one arm in a folded position across his chest and the other arm and hand lying partly across his body. He had on a light alpaca coat, and the sleeves of both his coat and shirt were pushed back from his wrist. The body of Mrs. Skinner was lying face downward, with her arms under her face. There is testimony to the effect that Mr. Skinner appeared to be about 60 years of age, and a light, frail man; that Mrs. Skinner was rather robust and the stronger and heavier of the two. There were no tracks in the snow where the bodies were found. Mr. and Mrs. Skinner were seen about 12 o'clock, or a few minutes after, at a place called Mountain View, on the cog railroad leading to the top of the mountain. They remained at this point about 20 minutes, and were there informed that "a storm was coming over the mountain" and advised to take the train. Mrs. Skinner then remarked: "We are from Texas, and I will show you that we will walk it." She was then offered coats and wraps for herself and husband, but she declined them, saying that they did not need them. Mr. and Mrs. Skinner were again seen making the ascent of the mountain about 3 o'clock in the afternoon. At this time they were about 2 or 2½ miles from the summit of the mountain, and the wind was blowing hard, and it was quite cold. They were here told that it was "a bad day to be walking to the Peak," and Mrs. Skinner replied: "It is bad, but it does not seem to be getting any worse." It does not appear that they were again seen until they were found dead as above related. Neither Mr. Skinner nor Mrs. Skinner ever had any children, but some years before their death a child, who took the name of Carnagie Frank Skinner, and who is one of the defendants in error in this suit, was given by his mother to them, and they had raised and cared for him since his infancy. At the time of their death this boy was about 13 years old. On the 28th day of July, 1904, Willis A. Skinner and Sallie E. Skinner made their wills, and on the 2d day of August, 1904, made codicils to their respective wills. These wills and codicils were made at the same time, attested by the same witnesses, and provided for the same executors. Both the wills and codicils were properly executed, were duly probated in the county court of Dallas county, and the executors named therein qualified thereunder. Charles F. Clint was duly appointed guardian at litem of the said Carnagie Frank Skinner. The clauses of the will and codicil of Willis A. Skinner are as follows:

"I, Willis A. Skinner, of the county of Dallas, state of Texas, being of sound mind, do make and publish this my last will and testament, hereby revoking all former wills at any time made by me:

"Item One. Should my beloved wife, Sallie E. Skinner, survive me, I give and bequeath to her all of my estate, real, personal and mixed, wheresoever situated.

"Item Two. In the event my said wife dies before I do, then and in that event I give, devise and bequeath to Carnagie Frank Skinner, the adopted son of myself and my said wife, all of my estate, both real, personal and mixed, and wheresoever situated.

"The boy, Carnagie Frank Skinner, has not been formally adopted by us, but his mother by an instrument in writing, gave him to me and my said wife, when he was an infant, and myself and wife have raised and cared for him since infancy.

"Item Three. In the event I survive both my said wife, Sallie E. Skinner, and my said adopted son, Carnagie Frank Skinner, then and in that event I give, devise and bequeath to Buckner's Orphans' Home and the Julia Fowler's Orphans' Home, both situated in Dallas county, Texas, all my estate, real, personal and mixed, and wheresoever situated, to be divided between said orphan homes, share and share alike.

"Item Four. Should my said wife, not be living at the date of my death, I give and bequeath to Mrs. Jennie Loughery, of the county of Dallas, the sum of $200.00, which my executors will at once pay to her without interest.

"Item Five. I hereby nominate and appoint Leroy R. Terry and R. C. Ayres, both of the city of Dallas, the executors of this, my last will and testament, and I direct that my said executors be not required to give bond, and that no action of any kind be had in any of the courts of this state in reference to my estate, except the probate of this will, and the return of the inventory and appraisement of my estate.

"Item Six. I hereby give to my executors, or the survivor of them the absolute power to sell and dispose of any part of my estate, except such lot or lots as are situated on Main street in the city of Dallas, and to use the interest, rents and revenues arising or growing out of my estate, for the support, education and maintenance of my adopted son, Carnagie Frank Skinner. And for this purpose my said executors shall retain possession and control of my estate until the said Carnagie Frank Skinner reaches the age of twenty-one years.

"Item Seven. It is my wish that the said Carnagie Frank Skinner be given a liberal education; my preference being the public schools of Dallas. The amount to be expended in support, education and maintenance of my said adopted son I leave to the discretion of my executors, admonishing them that labor is honorable, and that many boys have been ruined by extravagant allowances of money.

"Item Eight. Should the contingency happen upon which my estate vests in Buckner's Orphan Home, and the Julia Fowler Orphan Home, as above provided, it is my wish that my executors surrender the estate to said orphan homes immediately upon the probate of this will.

"Item Nine. Should either of my said executors die or refuse to qualify, the other executor is hereby vested with the power and authority which by the terms hereof is vested in both. In the event that both of my executors herein named die or fail or refuse to qualify I direct that an executor or executors be appointed by the proper court, which executors so appointed by the court shall execute such bond as the law may require.

"Item Ten. I direct that my body be buried by the side of my beloved wife, and that a suitable but not expensive monument be erected over our grave, bearing the following inscription:

'They remembered the fatherless and the orphan.'

"Witness my hand this the 28th day of July, 1904.　　　　　Willis A. Skinner.

"At the request of the testator and in his presence and in the presence of each other we sign as witnesses this the day and date above written.　　　　　M. L. Crawford.

"W. L. Crawford, Jr."

"Codicil No. One."

"Item One. My real estate in Dallas, Texas, shall not be sold by my executors unless the rents and revenues from my estate, economically administered are insufficient for the education and support of the said Carnagie Frank Skinner.

"Item Two. I wish my executors to pay to Mrs. Jennie Loughery $50.00 in addition to the $200.00 heretofore mentioned.

"Item Three. In case said Carnagie Frank Skinner leave no child or children living by him lawfully begotten, then and in that event, it is my will that the whole of my estate be divided between the Buckner's Orphan Home and the Julia Fowler Orphan Home, share and share alike.

"Item Four. This codicil in no wise modifies or changes item one of my will dated July 28th, 1904.

"This August 2, 1904.

"Willis A. Skinner.

"Witness:
"M. L. Crawford.
"W. L. Crawford, Jr."

The will of Mrs. Skinner provides in item 1 that:

"Should my beloved husband, Willis A. Skinner, survive me, I give and bequeath to him all of my estate real, personal and mixed, wheresoever situated."

Item 2 of her will is as follows:

"In the event my said husband dies before I do, then and in that event, I give, devise and bequeath to Carnagie Frank Skinner, the adopted son of myself and my said husband all of my estate, both real, personal and mixed, and wheresoever situated.

"The boy, Carnagie Frank Skinner, has not been formally adopted by us, but his mother by an instrument in writing gave him to me and my said husband when he was an infant, and myself and husband have raised and cared for him since infancy."

Item 3 reads thus:

"In the event I survive both my said husband, Willis A. Skinner, and my said adopted son, Carnagie Frank Skinner, then, and in that event, I give, devise and bequeath to Buckner's Orphans' Home and Julia Fowler Orphan Home, both situated in Dallas county, Texas, all my estate, real, personal and mixed, and wheresoever situated, to be divided between said orphan homes share and share alike."

In other respects the will of Mrs. Skinner is practically the same as that of her husband, Willis A. Skinner. The case was tried by the court without a jury, and, upon the conclusions of law and fact found and filed in writing, judgment was rendered that the plaintiffs take nothing by their suit, and that the defendants go hence and recover their costs.

As matters of fact the court found that on August 21, 1911, Willis A. Skinner and his wife, Sallie E. Skinner, died in a snowstorm on Pike's Peak, in Colorado, and that the evidence introduced in the case was not sufficient to show which one died first. As a matter of law the court concluded, as far as we need state, that:

As it was "unascertainable from the evidence which one, if either of the testators, Willis A. Skinner or Sallie E. Skinner, survived the other, their property rights are to be disposed of and adjudged as if death occurred to both at the same time; that the failure of proof as to which of the two testators, if either, survived the other, brings into operation items 2 of the wills and items 3 of the codicils, respectively, and the other parts of said wills and codicils, respectively, and under the said wills and codicils of each testator all the property of each was devised to and vested in the defendant Carnagie Frank Skinner."

The correctness of these conclusions of law is challenged by plaintiffs, and the principal propositions urged are, in substance: First, that under the statute, as at common law, the lands of decedents pass to their next of kin and heirs, and a devisee claiming adverse to the heirs under a will must establish his right through the will, but an heir is not required, before taking as heir, to prove that the deceased died intestate; second, that the rule has been long established in England, and is now well established in Texas, and most of the American states, that when it is shown that two or more persons perished in the same calamity, there is no presumption of law that one survived the other, or that they died simultaneously, and he whose right or claim depends on the fact of survivorship or simultaneous death, must prove the one or the other by legal and competent evidence, and the law allows no presumption in reference thereto; third, that a will which is to become effective only upon the happening of a certain contingency or condition is a contingent will, and in case the contingency does not arise, or is unascertainable, the will becomes, by the failure or inability to prove the happening of the event, of no effect, and the property of the decedent goes to his next of kin and sole heirs, under and by virtue of the statutes of descent and distribution, the same as if the decedent had died intestate; and, fourth, that Carnagie Frank Skinner having failed to prove survivorship or simultaneous death, this rule of the law operated on the wills, and caused them to lapse, whereupon the title and ownership of the property vested in the plaintiffs, the next of kin and sole heirs of the decedents, by operation of law. These propositions, although plaintiffs have propounded others, raise the questions presented by the assignments of error for our decision.

The decisions of the appellate courts of this state cited by plaintiffs are unquestionably to the effect that there is no presumption either of survivorship or of the simultaneous death of persons who perish in a common disaster, and that, as applied to this class of cases, the general rule is "that courts will not change the existing status or possession of property except upon adequate proof of facts authorizing such change." Hildenbrandt v. Ames et al., 27 Tex. Civ.

App. 377, 66 S. W. 128; Paden, Administrator, v. Briscoe, 81 Tex. 563, 17 S. W. 42. It has also been held, in effect, as contended by plaintiffs, that ordinarily "a condition in the will of survivorship must happen or be fulfilled before the estate can vest under the will." As has been shown by the will of Willis A. Skinner, he bequeathed to his wife, Sallie E. Skinner, all of his property in the event she survived him, and in the event she died before him he bequeathed it to Carnagie Frank Skinner; and by the will of Mrs. Skinner all of her property was bequeathed to her husband, Willis A. Skinner, in the event he survived her, and in the event he died before her, it was bequeathed to Carnagie Frank Skinner. So, the rule being that no presumption of survivorship or simultaneous death will be indulged in case of persons who perish by a common disaster, and there being no evidence in this case showing which one of the testators died first, or that they died at the same instant, the question for decision is: Did the property of Mr. and Mrs. Skinner pass to and vest in Carnagie Frank Skinner under the second item of their respective wills? We do not regard any decision of the courts of this state to which our attention has been called or of which we have any knowledge decisive of the question. But we think the construction to be given the wills in question, under the evidence and findings of fact made by the trial court, is made plain by decisions of other jurisdictions cited by appellees upon similar states of facts, and especially by the decision of the Supreme Court of the United States in the case of Young Women's Christian Home v. French, 187 U. S. 401, 23 Sup. Ct. 184, 47 L. Ed. 233. That case was appealed from the Court of Appeals of the District of Columbia to review a decree which reversed a decree of the Supreme Court of the District, and involved the construction of the will of Mrs. Sophia Rhodes. In item 1 of Mrs. Rhodes' will she devised to her husband during his life one-half the income of her property. In item 2 she devised all her property to her son, Eugene Rhodes, subject to the life estate of her husband. In item 3 she devised, in the event of the death of the son before the death of herself or her husband, the income to her husband for life, and at his death all the property to the Young Women's Christian Home; and in item 4, in the event of her becoming the survivor of both husband and son, she devised all her property to the Young Women's Christian Home. The husband died in January, 1895, the wife and son were later lost in a shipwreck, and the court held that the proof was not sufficient to show the order in which they died. The next of kin of Mrs. Rhodes claimed the property, but their claim was denied. The statement of the case as made by Chief Justice Fuller, who delivered the opinion of the court, shows that the Supreme Court of the District held that there was no

presumption of survivorship as between Mrs. Rhodes and her son, Eugene; "that the will manifested an unmistakable desire to guard against intestacy;" and that the intention of Mrs. Rhodes was clearly apparent that, if her husband and son should not survive her so as to receive the property, or if it remained under her control at the time of her death, it should go absolutely to the charity she had named, the Young Women's Christian Home, and decreed accordingly. From this decree Barbara Faul and Andrew Wasner, next of kin of Mrs. Rhodes, and John L. French, administrator of Eugene Rhodes, carried the case to the Court of Appeals of the District of Columbia, which concurred in the view that there was no presumption of survivorship as between the testatrix and her son, but held that:

The terms of the will " 'vesting the estate in Eugene Rhodes immediately upon testatrix's death, we agree that it raises a prima facie right in the personal representatives of the son, and imposes the burden upon her next of kin of displacing them by proof of his mother's survival,' and that the representatives and next of kin of the son were entitled to the entire fund."

The decree of the Supreme Court of the District was thereupon reversed, and the cause remanded to the court below, with a direction to enter a decree in conformity with that conclusion. From this decree of reversal an appeal was taken to the Supreme Court of the United States, and resulted in a reversal by the court of the decree of the Court of Appeals, with direction that the case be remanded, and that the decree of the Supreme Court of the District of Columbia be affirmed. In remanding the case with the direction stated the Supreme Court of the United States recognized the rule that there is no presumption of survivorship in the case of persons who perish by a common disaster, in the absence of proof tending to show the order of dissolution, but held that the question of actual survivorship, in such a case, is regarded as unascertainable, and that "descent and distribution take the same course as if the deaths had been simultaneous," citing a number of cases. It is also declared that the cardinal rule in the construction of a will is that the intention of the testator, as expressed in the instrument, or clearly deducible therefrom, must prevail, if consistent with the rules of law, and that another familiar rule is that the law prefers a construction which will prevent an intestacy to one that will permit it, if such a construction may reasonably be given. These rules being declared, the court proceeds to say that:

It is "apparent that Mrs. Rhodes designed to dispose of her entire property; to provide for her husband by securing to him for life an income from one-half of her estate; to provide for her son by leaving him the estate absolutely, subject to the husband's income; and, if her son died before his father, that the husband should have the income of the whole estate for his life, and at his death the estate should go * * * at once to the charitable institution,

that is to say, that if they did not survive her, the property on her death was immediately to take that destination."

The principle announced is supported by a citation of cases and quotations therefrom, based upon similar facts, among them being the case of Robison v. Female Orphan Asylum, 123 U. S. 702, 8 Sup. Ct. 327, 31 L. Ed. 293.

"In that case Robison left a will providing, thirdly, that his widow should have the income of all his estate, with the right to spend it, but not to have it accumulate for her heirs; fourthly, that if his sisters, Ann Smith and Eleonora Cummings Robison, 'be living at the death of myself and wife, Jane S. Robison aforesaid, that they or the one that may be then living shall have the income of all my estate so long as they may live, and at their death be divided in three parts, one-third part of the income to go to the Portland Female Orphan Asylum,' and one-third to each of two other institutions. Both sisters died before the testator."

In construing this will and determining to whom the property passed under the facts the court, after stating that the question was one "of the reasonable interpretation of the words of the particular will, with the view of ascertaining through their meaning the testator's intention," ruled that:

The fact that the sisters died before their brother, the testator, " 'whereby the legacy to them lapsed altogether, is not material, because if property be limited upon the death of one person to another, and the first donee happen to predecease the testator, the gift over would, of course, take effect, notwithstanding the failure, by lapse, of the prior gift'; that unless it appeared on the face of the will 'that the gift to the defendants was not intended to take effect unless the prior gift to Ann Smith and Eleonora Cummings Robison took effect, the former must be considered as taking effect in place of and as a substitute for the prior gift which, by reason of the contingency, has failed'; and that, considering the third and fourth subdivisions together, the limitations were to be taken as a complete disposition of his estate in the mind of the testator, who did not intend to die intestate as to any portion thereof, giving to the widow an estate for life, with an estate over for life to the sisters, contingent on surviving the widow, and with the ultimate remainder to the charitable institutions."

In the case of Newell v. Nichols, 12 Hun (N. Y.) 604, affirmed in 75 N. Y. 78, 31 Am. Rep. 424, it was held that:

"Where a devise is limited to take effect upon a condition or contingency annexed to a preceding estate, if that preceding estate should not arise, the remainder over will take place; the first estate being considered as a preceding limitation, and not as a preceding condition. * * * As when a testator meant to dispose of all his property and uses the words 'if the legatee should not survive,' held to mean 'if the preceding legacy should from any cause fail.' "

This holding in Newell v. Nichols is approved by the Supreme Court of the United States in the case of Young Women's Christian Home v. French, supra, and the court, after citing and reviewing several other analogous cases, and after reviewing and discarding the conclusions reached in Underwood v. Wing and Wing v. Angrave, 19 Beav. 459, 4 Deg. M. & G. 632, 8 H. L. Cas. 183, says:

"As in all of these cases, so in this, we are remitted to the language of the will to ascertain the intention of the testatrix, and if that intention is clearly deducible from the terms used, taking the whole will together, then we are bound to give that construction which will effectuate, and not defeat, it. Reading this will from the standpoint of the testatrix, as we must, we think it not open to doubt that she intended to dispose of all her estate, and did not intend to die intestate as to any part of it; that she had in mind only three objects of her bounty, her husband, her son, and the home; and that her intention, failing husband and son, was that the home should take. If husband nor son survived, it was to go to the home at once. Is her manifest intention to be defeated because, instead of saying, 'If neither my husband nor my son should survive me, I give and bequeath my property to the home,' she said, 'In the event of my becoming the survivor of both my husband, Oliver Wheeler Rhodes, and of my son, Eugene Rhodes, I then give, devise, and bequeath all my property to the Young Women's Christian Home'? We do not feel compelled to so hold, and, by accepting so technical and literal a view, to reach an adverse result on the theory of a change in the burden of proof, or of an accidental omission to prevent it. This is not a case of supplying something omitted by oversight, but of intention sufficiently expressed to be carried out on the actual state of facts. And as the estates of persons perishing in a common disaster, intestate, notwithstanding the statutes of descent and distribution, may not have made provision in respect thereof, are disposed of as if each survived as to his own property, we think, upon principle, that the property of Mrs. Rhodes should go as directed as if she survived her son, in the absence of proof to the contrary."

The court also announced that:

"Whether in a given case a condition precedent, a condition subsequent, or a conditional limitation is prescribed is, in the absence of unmistakable language, matter of construction, and that conditions cannot be annexed from words capable of being interpreted as mere description of what must occur before the estate given can arise."

We have thus liberally quoted from the case of Young Women's Christian Home v. French, supra, for the reason we believe the principle therein enunciated and the language used peculiarly applicable to the instant case, and settles the controversy initiated thereby against the plaintiffs. But the decision of the question need not be rested alone upon that case. There are others, we think, not mentioned therein, that support the contention of defendants here. St. John v. Andrews Institute, 191 N. Y. 254, 83 N. E. 981, 14 Ann. Cas. 708, appears to be in point. In that case Andrews made a will bequeathing his property to his wife, but provided that, if she should die before him, the property should go to the Andrews Institute. The testator and Mrs. Andrews perished together in a fire which destroyed their home, and the court having found that as between the husband and wife survivorship was unascertainable, and after announcing the rule that there is no presumption of survivorship in case of persons who perish by a common disaster, in the absence of proof tending to show the order of dissolution, held that there was no point of time when the title of Mr. Andrews was divested at which Mrs. An-

drews could have taken it, and that her simultaneous death was, in effect, the same as a death before his death, and the will of Mr. Andrews was therefore given effect in favor of the Institute.

In Supreme Council of Royal Arcanum v. Kacer, 96 Mo. App. 93, 69 S. W. 671, it is said:

"Whether based on a presumption of synchronous death or not, the law is settled that, if two or more persons are lost in the same catastrophe, and the ownership of property is afterwards drawn into litigation by contesting parties, each claiming to derive his right from one of the deceased persons as being the actual owner of the property when he died, and the question of which * * * turns on which survived longest, and there is no proof on that subject, the right to the property will be adjudged as it would be if it were known that both died at the same instant."

In 13 Cyc. 308, the rule that, where two or more persons perish in a common disaster, there is no presumption that one survived the other or that they died at the same moment, is stated, but it is further stated in that connection, sustained by many authorities cited, that:

"However this may be, it is certain that when two or more persons have perished in a common disaster, and there is no evidence as to which died first, the courts will dispose of property rights as though death occurred at the same time."

In Loving v. Rainey, 36 S. W. 335, decided by this court, the language of Mr. Redfield in his work on Wills, to the effect that, "where the words of a will are in the form of a condition precedent, but the intention of the testator as collected from every part of the will clearly indicates a different purpose, the latter will prevail," is quoted with approval.

So we think the authorities from which the foregoing quotations are taken establish, as in effect argued by counsel for defendants, that where the maker of a will and his primary devisee die in a common disaster, and there is no proof as to the order of death, the primary devisee will be treated as not surviving, and the gift to the secondary or substituted devisee shall take effect; that when the condition or limitation upon which the second devisee shall take is stated as the death of the primary devisee "before" the testator, and there is no evidence as to which died first, the condition or limitation is satisfied by the death of both the testator and the primary devisee in a common disaster. It is very plain, we think, that it was

not the intention of either Mr. Skinner or Mrs. Skinner to make the devise of their property to their adopted son, Carnagie Frank Skinner, depend upon a condition precedent which would admit of the property going to third persons. They manifestly had in mind only three objects of their bounty: Upon the part of Mr. Skinner, his wife, his adopted son, and the Buckner's Orphan Home and the Julia Fowler Orphans' Home; upon the part of Mrs. Skinner, her husband, her adopted son, and said homes—the intention of each being that, if for any reason the primary devisee could not receive the property, then it should go to the adopted son, the boy whom they had raised and for whom they evidently entertained great affection, and that, should neither the primary devisee named in the wills nor the adopted son be capable of receiving the property, then it was to go to the homes in the proportion devised. This being the clear intention of the testators, and both of them having died in the same calamity, and there being no proof as to the order of their dissolution, the wills stand as if they contained only the bequest to their adopted son. Re Willbor, 20 R. I. 126, 37 Atl. 634, 51 L. R. A. 863, 78 Am. St. Rep. 842. It necessarily follows, therefore, that the property devised by the wills passed to the defendant in error Carnagie Frank Skinner, and that the judgment of the district court denying the claim of plaintiffs in error was the proper one to be rendered.

As before indicated, we do not regard the ruling here made as being at variance with any former decision of the Supreme Court or Court of Civil Appeals. In no case cited by plaintiffs in error or known to us was the precise question involved in this case before the court. No similar question as to the construction of a will was involved in either of the cases cited, and it seems to us that no one can read the wills of Mr. and Mrs. Skinner without recognizing that, unless the primary devisee named lived to receive the gift intended, each purposed that it should pass to their adopted son, Carnagie Frank Skinner, and that in the event he was not living to receive the gift, it should go to the orphans' homes. We therefore readily follow the sound and just rule announced in Young Women's Christian Home v. French, supra, and other similar cases, and affirm the judgment of the court below.

Affirmed.