Elaine STEPHENS, Independent Executrix of the Estate of Vencie Beard, Deceased, Petitioner,

v.

Brandon Scott BEARD, Brian Jake Gilmore, Philip Chase Johnson, Megan Johnson, Jeremy Hopkins, Lindsey Beard, Pamela Johnson, Roland Scott Beard, Janet Lea Hopkins, Individually and As Trustee for Matthew C. Hopkins, and Beverly Kaye Gilmore, Respondents

Elaine Stephens, Independent Executrix of the Estate of Melba Beard, Deceased, Petitioner,

v.

Brandon Scott Beard, Brian Jake Gilmore, Philip Chase Johnson, Megan Johnson, Jeremy Hopkins, Lindsey Beard, Pamela Johnson, Roland Scott Beard, Janet Lea Hopkins, Individually and as Trustee for Matthew C. Hopkins, and Beverly Kaye Gilmore, Respondents

NO. 14–0406, NO. 14–0407

Supreme Court of Texas.

OPINION DELIVERED: March 18, 2016

William R. Pemberton, Crockett, for Elaine Stephens.

Roland Scott Beard, pro se.

Pamela Johnson, pro se.

Brandon Scott Beard, pro se.

Beverly Kaye Gilmore, pro se.

Philip Chase Johnson, pro se.

Lindsey Beard, pro se.

Jeremy Hopkins, pro se.

Brian Jake Gilmore, pro se.

Megan Johnson, pro se.

Janet Lea Hopkins, pro se.

## PER CURIAM

This case concerns the construction of the nearly identical wills of Vencie and Melba Beard. Vencie and Melba were a married couple. Vencie shot and killed Melba shortly before taking his own life. The wills disposed of each testator's separate property and all of the couple's community property. Each will contained the following provision: "If both my [husband/wife and I] die in a common disaster or under circumstances making it impossible to determine which of us died first, I bequeath [specified cash amounts to nine individuals]." Each will also contained several other provisions devising and bequeathing certain property, including the residual estate, in the event that either spouse did not survive the other by 90 days.

It is undisputed that Melba died at 8:59 p.m. and Vencie died at 10:55 p.m. on the same night. After their deaths, Elaine Stephens—as independent executrix of both estates—filed two suits (one for each estate) seeking a declaration that the Beards did not die in a "common disaster or under circumstances making it impossible to determine [who] died first." The trial court disagreed with Stephens and found that the Beards did die in a common disaster. Moreover, the trial court found that the Simultaneous Death Act (SDA), Probate Code Chapter 47,[1] was incorporated into the Beards' wills. The court of appeals affirmed both holdings. *See Ste-*

---

1. The legislature repealed the Probate Code and re-codified its provisions in the Estates Code, effective January 1, 2014. Probate Code Chapter 47's provisions are now con-tained in Estates Code Chapter 121. Chapter 47 was in effect at the time of the Beards' deaths.

*phens v. Beard,* 428 S.W.3d 385 (Tex. App.—Tyler 2014).

In construing a will, our focus is on the testator's intent, which is "ascertained by looking to the provisions of the instrument as a whole, as set forth within the four corners of the instrument." *Perfect Union Lodge No. 10 v. Interfirst Bank of San Antonio, N.A.,* 748 S.W.2d 218, 220 (Tex.1988). Thus, "[t]he court should focus not on 'what the [testator] intended to write, but the meaning of the words [he] actually used.'" *San Antonio Area Found. v. Lang,* 35 S.W.3d 636, 639 (Tex. 2000) (quoting *Shriner's Hosp. for Crippled Children of Tex. v. Stahl,* 610 S.W.2d 147, 151 (Tex.1980)). Such words, "whether technical or popular," are construed "in their plain and usual sense, unless a clear intention to use them in another sense" is present in the instrument. *White v. Taylor,* 155 Tex. 392, 286 S.W.2d 925, 926 (1956). Generally, "[t]he will should be construed so as to give effect to every part of it, if the language is reasonably susceptible of that construction." *Perfect Union Lodge,* 748 S.W.2d at 220; *Welch v. Straach,* 531 S.W.2d 319, 322 (Tex.1975) ("all parts of the testamentary writings ... are to be harmonized and given effect").

The phrase "common disaster" has a well-recognized legal meaning: "[a]n event that causes two or more persons [with related property interests] ... to die at very nearly the same time, *with no way of determining the order of their deaths.*" BLACK'S LAW DICTIONARY 333 (10th ed.2014)

(emphasis added); *see also White,* 286 S.W.2d at 926–27; *Glover v. Davis,* 366 S.W.2d 227, 231 (Tex.1963) ("where two or more persons perished in the same disaster, there was no presumption at common law that either survived or that all perished simultaneously.").[2] Common-disaster provisions are necessary because "[c]ases occasionally arise in which testator and legatee ... are killed in a common disaster under circumstances which make it impossible to determine as a matter of fact which of them died first." 3 JEFFREY A. SCHOENBLUM, PAGE ON THE LAW OF WILLS § 29.174 (LexisNexis Matthew Bender, 2d ed.2012); *see also* BLACK'S LAW DICTIONARY 333 (10th ed.2014) (defining "common-disaster clause" as a "provision in a ... will, covering the situation in which the transferor and transferee die in a common disaster."). Using a common-disaster provision thus ensures that, when the order of death is uncertain, property passes in a planned and predictable way.

The court of appeals acknowledged the legal definition of "common disaster," but then crafted its own definition by separately defining the words "common" and "disaster" and combining their separate definitions. *Stephens,* 428 S.W.3d at 387–88 ("'common' can mean shared by two or more ... [and] disaster has been defined as a calamitous event or great misfortune." (Citing MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 250, 355 (11th ed.2011))). The resulting definition of "common disaster" was "any situation where the death of two or more people arose out of the same set

---

**2.** Courts in other jurisdictions have also applied this legal meaning to clauses providing for certain distributions in case of a "common disaster." *See, e.g., In re Davis' Estate,* 186 Misc. 955, 61 N.Y.S.2d 427, 429 (N.Y.Sur. 1946), *aff'd In re Davis' Will,* 271 A.D. 970, 69 N.Y.S.2d 327 (1947) ("It is plain to be understood that the petitioner in using the term 'common disaster' meant and intended to provide for a case where both parties perished and there were no proofs to establish the survivorship"); *Modern Woodmen of Am. v. Parido,* 253 Ill.App. 68, 74 (Ill.App.Ct.1928), *aff'd,* 335 Ill. 239, 167 N.E. 52 (1929) ("'Dying at the same time' or 'dying in a common disaster,' are merely, in law, different statements of the same situation or result....").

of circumstances." *Id.* at 388. Notably, the court of appeals' definition excluded the requirement that it be impossible to determine who died first. *See id.* Applying its new definition, the court of appeals held the homicide-suicide was "a common disaster in spite of the fact that Vencie did not successfully kill himself immediately" because the shots that killed the Beards "were fired in one episode." *Id.*

The court of appeals erred by ignoring the legal definition of "common disaster." "[W]here the meaning of the language used in the will has been settled by usage and sanctioned by judicial decisions, it is presumed to be used in the sense that the law has given to it, and should be so construed, unless the context of the will shows a clear intention to the contrary." *Mitchell v. Mitchell,* 151 Tex. 1, 244 S.W.2d 803, 806 (1951) (internal quotation marks omitted); *see also Lang,* 35 S.W.3d at 639; *Davis v. Shanks,* 898 S.W.2d 285, 286 (Tex.1995). As already noted, "common disaster" is a phrase with a settled legal usage. *See White,* 286 S.W.2d at 926–27; *Fitzgerald v. Ayres,* 179 S.W. 289, 291–92 (Tex.Civ.App.—Dallas 1915, writ ref'd);[3] BLACK'S LAW DICTIONARY 333 (10th ed. 2014). It is used to ensure orderly distribution when the order of death is uncertain, and so—absent will language establishing an intent to the contrary—the order of death *must* be uncertain for a common-disaster provision to become effective.

The Beards' wills do not demonstrate a contrary intent. It appears that the Beards used "common disaster" in its legal sense and then added "or under circumstances making it impossible to determine [who] died first." This addition ensured that the common-disaster provision would become effective if the Beards died and it was "impossible to determine [who] died first," but where their deaths did not result from any common occurrence or event. *See* 9 GERRY W. BEYER, TEXAS PRACTICE SERIES: TEXAS LAW OF WILLS § 29.2 (3d ed. 2002) (" 'Common disaster' fails to encompass unrelated but closely-timed deaths."). Reading the wills' other provisions tends to support this reading. *See Welch,* 531 S.W.2d at 322. For example, when the Beards wanted to provide for close-in-time but non-simultaneous death situations, they did so using survival periods. Thus, had they intended for "common disaster" to encompass the circumstance in which they died in quick succession, but not simultaneously, it seems strange that they would have used a different (and ineffective) provision to accomplish that intent.

We note that the Beards' wills are not models of clarity—by including the broad phrase "or under circumstances making it impossible to determine [who] died first," the drafter tends to render "common disaster" (or at least the common legal meaning of the phrase) meaningless. In the context of the Beards' wills, howev-

---

**3.** In *Fitzgerald,* a married couple from Dallas attempted to scale Pike's Peak in Colorado. *Id.* at 289–90. When they were about two and a half miles from the summit, a snowstorm hit. *Id.* at 290. Although a train was available to take them to the summit, the wife refused, remarking, "We are from Texas, and I will show you that we will walk it." *Id.* Sadly, their bodies were later found about half a mile from the summit. *Id.* The Dallas court of appeals asked how the couple's prop-

erty should transfer in a "common disaster" where there was "no evidence ... showing which one of the testators died first." *Id.* at 292. The court also noted "that there is no presumption either of survivorship or of the simultaneous death of persons who perish in a common disaster." *Id* at 291. In other words, the court recognized the order of deaths in a "common disaster" is unknown. *See id.*

er, reading "common disaster" as the court of appeals did ignores common sense, the settled nature of the phrase, and—most importantly—the testators' intent as shown by "the meaning of the words [they] actually used." *See Lang*, 35 S.W.3d at 639 (internal quotation marks omitted). Thus, this is a case in which we "prefer ordinary meaning to an unusual meaning that will avoid surplusage." *Cf.* Antonin Scalia & Bryan A. Garner, Reading Law 176 (2012); *see also Stahl*, 610 S.W.2d at 151. Accordingly, we find that the Beards intended to use "common disaster" according to its settled legal meaning. Because Vencie died nearly two hours after Melba, their deaths did not trigger the common-disaster provisions in their wills.[4]

Accordingly, we grant the petition for review and, without hearing oral argument, Tex. R. App. P. 59.1, we reverse the court of appeals' judgment and render judgment that the Beards did not die in a "common disaster."

---

4.  Stephens also urges, as she did in the court of appeals, that the Beards' wills did not incorporate the SDA. We agree. The common-disaster and survival-period provisions of the Beards' wills clearly constitute "language dealing explicitly with simultaneous death or deaths in a common disaster, or requiring that the devisee ... survive the testator for a stated period in order to take under the will," thus supplanting the SDA's default provisions. *See* Tex. Prob. Code § 47(c).